747 So.2d 120 (1999)
Klareenca Marria T.H. NICHOLS, plaintiff-Appellant,
v.
Richard Dean NICHOLS, Defendant-Appellee.
No. 32,219-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*121 Dimos, Brown, Erskine & Burkett by Lynne O. Bice, Monroe, Counsel for Appellant.
McLeod Verlander by Robert P. McLeod, Jr., Monroe, Counsel for Appellee.
Before BROWN, STEWART and PEATROSS, JJ.
STEWART, J.
The appellant, Klareenca Marria T.H. Nichols, R.N. ("Kris"), appeals the judgment of the Fourth Judicial District Court, Parish of Morehouse, Judge D. Milton Moore, III, awarding joint custody of the minor child to both parents with the father, Dr. Richard Dean Nichols ("Richard"), designated as the domiciliary parent and visitation to Kris pursuant to the Joint Custody Implementation Plan. We affirm in part, reverse in part and remand.

FACTS
The parties, Kris and Richard, were married in Bastrop, Louisiana on August 12, 1994. One child was born of the marriage, Richard Thorne Nichols ("Thorne"), on November 3, 1995. The parties were physically separated at the time of Thorne's birth, but resumed living together in February of 1996. In May 1996, Kris moved to Selma, Alabama with Thorne and her two children from a previous marriage. *122 In November 1996, Kris filed a petition for divorce seeking sole custody of Thorne. The parties were divorced on October 2, 1997. The issues of custody and support were not addressed in the divorce decree.
After both parties filed rules seeking sole custody, the court appointed a neutral expert, Dr. Tony Young ("Dr.Young"), to evaluate both parents and to make a recommendation to the court regarding custody. The rules for custody and child support were heard on April 13, 16 and 24 of 1998. Due to the volatile relationship between the parents regarding visitation, Richard filed a motion to supplement the record with additional evidence and for interim visitation order pending the court's custody ruling. Richard alleged that Kris had constantly interfered with his visitation rights.
The trial court granted Richard's motion for interim custodial rights on June 18, 1998. The judgment, filed July 3, 1998, provided specific times for Richard to have physical custody of Thorne for the next sixty days, including a week long visitation with Thorne pending the court's final custody determination.
After considering all of the factors enumerated in La. C.C. Art. 134, the trial court filed written reasons for judgment on September 10, 1998 and the judgment was filed in the matter on September 21, 998. The judgment awarded joint custody of the minor child to both parents with Richard being awarded the domiciliary custody and visitation to Kris pursuant to the Joint Custody Implementation Plan. The court found Kris to be most unwilling to allow Richard a reasonable opportunity to have a meaningful visitation with Thorne. The custody plan gives Kris visitation one week a month from September through May and two weeks each June, July and August until the child is enrolled in school. When the child reaches school age, Kris shall have Thorne two weekends a month from September through May and two weeks each June, July, and August, with specific holiday visitation provided for. From this judgment, Kris appeals and lodges two assignments of error.

DISCUSSION
A trial court's determination regarding child custody is to be afforded great deference on appeal and will not be disturbed absent a clear abuse of discretion. Hawthorne v. Hawthorne, 96-89 (La.App. 3rd Cir.5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365; State in the Interest of C.G., 24,631 (La.App. 2d Cir.1992), 609 So.2d 1049; writ denied, 93-0009 (La.2/5/93); 612 So.2d 85. Every child custody case must be decided based only on its own particular facts and circumstances. McKinley v. McKinley, 25,365 (La.App.2d Cir.1/19/94), 631 So.2d 45; Lindner v. Lindner, 569 So.2d 173 (La.App. 1st Cir. 1990). On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
The fact finder's great discretion extends to its assessment of expert testimony. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). The weight to be given expert testimony depends, ultimately, on the facts on which it is based, as well as the professional qualifications and experience of the expert. Meany v. Meany, 94-0251 (La.7/5/94), 639 So.2d 229; Thomas v. Petrolane Gas Service, 588 So.2d 711 (La.App. 2d Cir.1991). For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record; if it is not, the trial court may reject it. Gould v. Gould, 28,996 (La.App.2d Cir.1/24/97), 687 So.2d 685, 690; Meany v. Meany, supra; Rogers v. Roch, 95-242 (La.App. 5th Cir.10/18/95), 663 So.2d 811.
In furtherance, the factors in La. C.C. Art. 134 are provided as a guide to *123 the court in making the fundamental finding as to what disposition is in the best interest of the child. The list of factors is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. Because of the tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court. McKinley v. McKinley, supra; Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.1993)

DESIGNATION OF RICHARD AS DOMICILIARY PARENT
In assignment of error number one, Kris urges that the trial court erred in designating Richard as the domiciliary parent because the court did not give sufficient weight to Kris' role as the sole care-giver throughout Thorne's life and that the court disregarded the court appointed expert's recommendation that Thorne not be away from Kris for more than a night or two until he was five years old.
Richard counters that although the primary caregiver status is important, it is by no means controlling. Kris erroneously argues that because Dr. Young felt the caregiver role was important the trial court should have allowed that to be the determinative factor. Of equal or greater importance under the jurisprudence is the willingness and ability of each parent to encourage and support a close relationship between the child and the other parent. The trial court recognized that Kris has been unwilling to allow Richard to have meaningful time with Thorne. Furthermore, Kris unilaterally took Thorne to Alabama and away from his father and thereby became the sole caregiver.
In the case sub judice, the trial court considered the evidence and testimony presented, including that of Dr. Young. Dr. Young conducted psychological evaluations on Richard and Kris consisting of the Minnesota Multiphasic Personality Inventory (MMPI) and interviews. As for Kris' allegations about Richard's drinking or physically harming Thorne, Dr. Young testified that in looking back over the testing record he did not see any indication or any propensity to violence ... and that the McAndrews scale suggests that Richard is at the clinical cutoff for a propensity to alcohol addiction.
Dr. Young's findings in test scores indicated twelve elevated scores for Kris on the MMPI, while Richard has only three elevated scores. Dr. Young's testing indicated a possible psychiatric illness such as conversion disorder for Kris, with an elevation on the Hysteria Scale. Dr. Young opined that such persons are "pretty self-centered" with "instability of mood ... or behavior," and that they ... "are immature, have a strong need for attention," and are often "real passive or real aggressive and will attempt to indirectly control other people."
However, Dr. Young testified at his deposition that his recommendation that the child be placed in the primary custodial care of his mother was based on the fact that Thorne was 2 ½ years old.
The trial court, after listening to the lay testimony, found that "much of Dr. Young's testimony was of little utility. Some of his conclusions are belied by the facts brought out in testimony ... much of his opinions are expressed in a general way without application to the factual testimony."
In designating the domiciliary parent, for purposes of joint custody determination, consideration must be given to factors in La. C.C. Art. 134 and any other relevant factors. The principal consideration in every child custody case is the best interest of the child. There is love and affection between the child and both parents. The record supports finding that both parents love their son.
The trial court's decision to designate the father as domiciliary parent was based upon factors in La. C.C. Art. 134 and other relevant factors. The court expressed concern *124 regarding Kris' unilateral choice to relocate hundreds of miles away and her not allowing Richard even a minimal amount of meaningful visitation. Therefore, the court placed very little weight on the love, affection and emotional ties between each parent and the child factor. After hearing testimony from witnesses for both parties, the court expressed concern about the willingness of Kris to provide proper parental supervision of her children, her open cohabitation, including Kris, Thorne and Matt Hutchinson all sleeping in the same room and the fact that her oldest son is an eighth grade dropout. These factors were taken into consideration by the court when making a decision about the capacity and disposition of each party to give the child love, affection and spiritual guidance and to continue the education and rearing of the child.
Further consideration was given by the court to the fact that both parties are equal in the ability to provide the child with the necessary material needs. However, Kris has failed to obtain medical health insurance for herself or any of the children when she has the means to do so. On the other hand, Richard has a health insurance plan and is in a superior position to provide Thorne with food, clothing, and medical care.
When considering the length of time Thorne lived in a stable, adequate environment and the desirability of maintaining continuity of that environment, the court took into consideration the following facts. Kris lives in Selma, Alabama and Richard lives in Bastrop, Louisiana. Kris' residence is a rural and remote location, with sparsely decorated rooms and the photos did not reveal any type of wall decorations or the presence of toys or playthings. Richard's home is modest and in a neighborhood where many children reside. The court concluded that Richard's home would be much more conducive to Thorne having playmates and friends than the remote rural location in Alabama.
In addition, the court found that Richard offered greater permanence as a family unit of the proposed custodial homes for Thorne than does Kris. In September 1998, Kris married the man with whom she was living, one month before she gave birth to his child. Kris now has had 6-7 husbands and five children fathered by four different men. Richard remarried in November 1997, when it became apparent there would be no further attempts of reconciliation between him and Kris. Richard lives with his wife, Angela, and his stepdaughter Shaina. The trial court concluded that Richard had willingly taken on role of stepfather to Shaina, Angela's daughter, and testified sincerely as to what he believes Thorne might add to his family unit.
The moral fitness of each party, insofar as it affects the welfare of the child was also considered by the trial court. The trial court heard testimony which created grave concern about Kris' ability to tell the truth and her inability to maintain self-control and restrain her emotions. On one occasion Kris traveled from Alabama to Bastrop and wantonly vandalized, with an ax and hammer, a metal storage building constructed by Richard. The trial court found the twenty photographs introduced into evidence by Richard "a chilling testament to the rage exhibited by Kris in this outburst." Witnesses testified about Kris engaging in questionable practices, including frequently dressing without undergarments and mentioning that predilection to others.
At the conclusion of the evidence, the trial court found that Kris was most unwilling to facilitate and encourage a close and continuing relationship between Thorne and Richard. Even during the trial Kris refused to bring Thorne to Louisiana so that he could visit with his father. The child remained in Alabama with a relative, while Kris, her mother and her three other children traveled to Louisiana to attend the trial. The trial court found that Kris offered no plausible reasons for *125 not bring Thorne to Louisiana. On the other hand, Richard testified that he recognized that Thorne was emotionally close to his mother and placed a picture of Kris next to Thorne's bed as a constant reminder of her. The court concluded that there was clear and convincing evidence that an award of domiciliary custody to Richard would most likely facilitate a close and continuing relationship between Thorne and his mother.
After carefully reviewing the record, we find that the trial court properly considered Dr. Young's testimony along with all of the evidence and testimony presented and chose to give more credit to the evidence presented by Richard. While none of the above factors are sufficient alone to be the basis for a domiciliary parent decision, taken as a whole, we conclude that the evidence supports the decision to make the father the domiciliary parent. The best interest of the child rests in making his permanent domicile with his father. The trial court's decision to award joint custody of Thorne to Richard and Kris, with Richard designated as domiciliary parent, was made after all the evidence was diligently reviewed. On this record, we can find no abuse of discretion in the trial court's decision.
This assignment of error is without merit.

ALLOCATION OF SHARED CUSTODY
Joint custody determinations are governed by La. R.S. 9:335 which provides in pertinent part:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
"When the court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody." O'Brien v. O'Brien, 30,001 (La. App.2d Cir.12/10/97), 704 So.2d 933, 936; Williams v. Williams, 540 So.2d 1013 (La. App. 2d Cir.1989). Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir. 1983).
This court pointed out in Pahal v. Pahal, 606 So.2d 1359, 1363 (La.App. 2d Cir. 1992) that "joint custody contemplates sharing of physical custody ... although equal sharing of custody is not mandated; substantial time, rather than strict equality of time, is required under scheme providing for joint custody of children." Boyd v. Boyd, 26,292 (La.App. 2 Cir. 12/7/94), 647 So.2d 414, 417; Foy v. Foy, 505 So.2d 850 at 852 (La.App. 2d Cir.1987); Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir. 1984). It does not necessarily mean a fifty-fifty sharing of time.
In Pahal, supra, the parties were awarded joint custody of their 11-month-old son, with the father designated as domiciliary custodian. The mother appealed claiming the trial court erred in naming the father domiciliary custody and in denying the mother frequent and continuing physical custody of the child.
This court ruled in Pahal that the trial court's award of timesharing in all but the summer months to be reasonable and feasible and in the best interest of the child. Mrs. Pahal was given physical custody every other weekend from Fridays at noon until Mondays at noon and from 9:00 a.m. until 8:00 p.m. on the Mondays that she does not enjoy regular weekend visitation. The trial court's "joint implementation plan provided Mrs. Pahal with approximately *126 125-135 days of physical custody per year, including holidays. Although the plan did not provide 50-50 timesharing, it promotes stability and continuity in the domiciliary parent's home, which is an important factor in the child's upbringing." Pahal, supra at 1363. Nevertheless, "in order to achieve more equal timesharing, we hold that Mrs. Pahal's summer custody should be extended to six weeks." Pahal, supra at 1364. The amendment provided three additional weeks of custody.
Each case will depend on the child's age, the parents' situations, and other factors relevant to a particular child custody dispute. Swope v. Swope, 521 So.2d 656, 659 (La.App. 1st Cir.1988); Pevey v. Pevey, 484 So.2d 959, 962 (La.App. 1st Cir.1986). Although divided, physical custody is an option in some circumstances, the courts have been willing to "split the child" only when the parents live a short distance from one another and the child is not required to attend different schools. Swope v. Swope, supra, citing Meylian v. Meylian, 478 So.2d 218 (La.App. 3rd Cir. 1985); Brooks v. Brooks, 469 So.2d 398 (La.App. 3rd Cir.1985); Peyton v. Peyton, 457 So.2d 321 (La.App. 2nd Cir.1984); Duhe v. Duhe, 451 So.2d 1198 (La.App. 5th Cir.1984); Black v. Black, 460 So.2d 1175 (La.App. 2nd Cir.1984), writ denied, 463 So.2d 1318 (La.1985); Slack v. Slack, 458 So.2d 177 (La.App. 5th Cir.1984).
In the instant case, Kris now has visitation one week a month in September through May, two weeks in June, July, and August and one-half of all the major holiday periods. When Thorne reaches school age, Kris' visitation will be two weekends a month in September through May, two weeks in June, July, and August and one-half of all the major holiday periods.
We cannot conclude that the amount of time granted to Kris is so nominal as to render her a "mere visitor" in the life of Thorne. Joint custody does not always result in the equal sharing of physical custody of the children between the parents.
Nevertheless, additionally, we are mindful of our own recent jurisprudence which has reversed or amended joint custody awards where the non-domiciliary parent is granted less than 100 days of custody. See, O'Brien, supra, and citations therein. However, we do not lay down hard and fast rules and guidelines in these cases. Carroway v. Carroway, supra. Every child custody case must be viewed on its own peculiar set of facts and relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. O'Brien, supra.; Wilson v. Wilson, 30,445 (La.App. 2 Cir. 4/09/98), 714 So.2d 35.
We believe the intent of the statute is not achieved. The judgment provides Thorne with the stability of a primary care giver; however, it does not provide Kris with substantial custodial privileges on a frequent and continuing basis. We, therefore, find the trial court was clearly wrong in the amount of visitation awarded as it does not assure the child frequent and continuing contact with the non-domiciliary parent.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court insofar as it makes the father the domiciliary parent. Because it has been one year since the trial, we are unable to determine specific changes or make amendments to the trial court judgment in order to comport with the statutory mandate to allow both parents frequent and continuing contact with the child to the extent feasible. Therefore, we remand the case to the trial court to establish a more meaningful plan of joint custody which provides frequent and continuing contact with the non-domiciliary parent. The code requires a joint implementation plan, and the jurisprudence has interpreted this to mean a plan providing substantial, while not always equal, physical custody for the non-domiciliary parent. The hearing on this matter *127 is to be held within 60 days from the date that this opinion becomes final. Costs of this appeal shall be shared equally between the parties, Klareenca Marria T.H. Nichols and Dr. Richard Dean Nichols.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.