805 So.2d 1213 (2002)
Sheree Roan CRAFT, Plaintiff-Appellee,
v.
Alfred McKinley CRAFT, Defendant-Appellant.
No. 35,785-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
*1214 Richard L. Fewell, Jr., West Monroe, Counsel for Appellant.
Donald L. Kneipp, Monroe, Counsel for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
BROWN, J.
Plaintiff, Sheree Roan Craft (now Hicks), and defendant, Alfred McKinley Craft, were married on May 6, 1988, and divorced on July 24, 1991. Of the marriage were born two children, Bo, on March 27, 1989, and Shelbee, on May 29, 1990. In a November 24, 1991, judgment, Alfred was given two overnight visits during the week, alternating weekends and specified holidays. The judgment also provided that Alfred was to pay child support in the amount of $473 per month and that Sheree was responsible for the cost of daycare, medical insurance and all uncovered medical expenses.
On July 1, 1998, Alfred filed a rule seeking, inter alia, a decrease in and/or partial termination of his child support obligation, compliance with an August 1996 order to *1215 substitute psychologists and modification of the custody arrangement. On November 18, 1998, Sheree filed a rule for contempt for Alfred's failure to pay child support and a motion to modify visitation and child support.
Trial was held over the course of several days in March and May of 1999. Both parties were evaluated by a court-appointed psychologist, Webb Sentell. The court issued its written reasons for judgment on March 28, 2001, and a judgment in accordance therewith on July 12, 2001.
The trial court awarded the parties joint custody of the children and maintained Sheree as primary domiciliary parent. Alfred was given visitation with Bo on alternating weekends and Wednesday nights, as well as majority of the summer. Alfred was estranged from his daughter, Shelbee, and had not visited with her for some time. Because of this situation, Alfred was awarded visitation with Shelbee from 3:00 to 8:00 p.m. on Wednesdays and from 9:00 a.m. to 2:00 p.m. on the Saturdays he has Bo.[1]
The court further rendered judgment against Alfred for past due child support in the amount of $18,447 together with legal interest from the date of judicial demand, attorney fees in the amount of $500 and related court costs. The court also found Alfred in contempt for failing to pay child support and ordered him to pay the amount in arrears and one-half of Dr. Baker's fees which were not covered by insurance.[2] The court further amended the support judgment to assess Alfred with a proportionate share of the children's extraordinary medical expenses.[3]
It is from this judgment that Alfred has appealed.

Discussion

Custody
The initial joint custody decree rendered on November 27, 1991, which was based upon the trial court's consideration of the testimony of the parties and their witnesses as well as the evidence introduced, awarded Alfred visitation with the children every other weekend and two overnight visits during the week. Thereafter, the parties consented to implementation of a "co-parenting" arrangement which gave Alfred additional time with the children. This change is reflected in a judgment rendered on December 13, 1995, and signed and filed on January 25, 1996.
In the latest series of rules and motions filed by the parties in this protracted litigation, Alfred sought a more balanced physical sharing of the children while Sheree sought to limit the time that the children spend with their father during the week. After trial, which lasted several days, the trial court significantly reduced Alfred's weekday visitation with the children.
The specific provisions of the joint custody plan ordered by the court are as follows:

*1216 (1) Ms. Hicks shall have physical custody of Shelbee with reasonable visitation granted to Mr. Craft.[4]
(2) Ms. Hicks shall have physical custody of Bo during the nine months of the school year, beginning 10 days before school starts in the fall and ending 10 days after school ends in the spring.
(3) Mr. Craft shall have visitation with Bo during the school year every other weekend. This weekend visitation will begin after school on Friday afternoon and end on Sunday evening at 6:00 p.m.[5]
(4) Also, during the school year, Mr. Craft shall have overnight visitation with Bo on Wednesday beginning after school and ending when Mr. Craft returns Bo to school on Thursday morning.
(5) The parties are to alternate all major holidays including the time off from school in an equal manner.
(6) Mr. Craft shall have physical custody of Bo during the three summer months, beginning 10 days after school ends in the spring and ending 10 days before school starts in the fall.
(7) During the summer, Ms. Hicks shall have visitation with Bo every other weekend beginning at 3:00 p.m. on Friday and ending at 6:00 p.m. on Sunday.
(8) During the summer, Ms. Hicks shall have Wednesday night visitation with Bo from 3:00 p.m. on Wednesday until 9:00 a.m. on Thursday.
(9) During the summer, Ms. Hicks shall be able to have a one week (seven days) vacation with Bo as long as she gives Mr. Craft at least two weeks advance notice in writing of her intended vacation plans.
On appeal, Alfred urges that the trial court erred in failing to award him 50/50 physical custody of the children.
The paramount consideration in a change of custody contest is always the best interest of the child. La.C.C. art. 131; AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756; Wilson v. Wilson, 30,445 (La.App.2d Cir.04/09/98), 714 So.2d 35; Stewart v. Stewart, 30,161 (La.App.2d Cir.01/21/98), 705 So.2d 802, writ denied, 98-0748 (La.05/01/98), 718 So.2d 418. La. C.C. art. 134 provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interest of the child. An analysis of these factors should be made in actions to change custody as well as those to establish custody initially. La.C.C. art. 134, comment (d); Shaw v. Shaw, 30,613 (La.App.2d Cir.06/24/98), 714 So.2d 906, writs denied, 98-2414, 98-2426 (La.11/20/98), 729 So.2d 556, 558.
Joint custody determinations are governed by La.R.S. 9:335 which provides in pertinent part that:
(A)(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
*1217 When the trial court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody. Ellinwood v. Breaux, 32,730 (La. App.2d Cir.03/01/00), 753 So.2d 977; Nichols v. Nichols, 32,219 (La.App.2d Cir.09/22/99), 747 So.2d 120; O'Brien v. O'Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933; Pahal v. Pahal, 606 So.2d 1359 (La.App. 2d Cir.1992). Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Ellinwood, supra; Boyd v. Boyd, 26,292 (La. App.2d Cir.12/07/94), 647 So.2d 414. As noted by the court in Ellinwood, supra, joint custody does not necessarily mean a 50/50 sharing of time. See also Nichols, supra; Wilson, supra.
Instead, every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Nichols, supra; O'Brien, supra. Each case will depend on the children's ages, the parents' situations and other factors relevant to that particular custody dispute. Id.; Brazan v. Brazan, 93-2369 (La.App. 1st Cir.06/24/94), 638 So.2d 1176.
The trial court's determination regarding child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Ellinwood, supra; Shaw, supra; Warlick v. Warlick, 27,389 (La.App.2d Cir.09/29/95), 661 So.2d 706. As noted by the court in Wilson, supra, an appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion.
Turning now to the facts of the instant case, the trial court made its determination based upon the following considerations as noted in its written reasons for judgment:
The record indicates that the custody and related issues between these parties have a protracted history. The record also shows that both parents care for the children and that both parents have a good relationship with Bo. The parental relationship between Mr. Craft and Shelbee is problematic and will be addressed later. When considering the factors in Civil Code Article 134, the Court finds that it is in the best interest of the children for Ms. Hicks to continue to be designated the primary custodial parent and for visitation to be exercised as indicated herein. The Court finds Ms. Hicks' living situation to be more stable, and further finds that she is better able to provide more stability for the children during the school year. Additionally, this visitation plan provides for less contact between the parents, which may help alleviate the conflict between them, and may also help to insure that the children have more continuity in their school week.
In making this ruling the Court considered the totality of the testimony including the following: Mr. Craft admits to recent, fairly serious, both health and financial problems, while Ms. Hicks is gainfully employed and indicated no health or financial difficulties. Testimony indicated that Mr. Craft had indefinite future plans to move to Arkansas. This visitation plan would more easily accommodate that move, if it indeed is made.
While Mr. Craft did make some donations for the school and attend parent-teacher conferences, the overall testimony showed that Ms. Hicks was much more actively involved in and with the schooling of the children. For example, Mr. Craft did not remember Bo's teacher's name. Also, Ms. Honeycutt (Bo's teacher) testified that Mr. Craft rarely *1218 asks her about how Bo is doing when he picks Bo up.
Ms. Hicks has extended family nearby who help with the children after school, while Mr. Craft testified he leaves Bo with a secretary in front of a T.V. after school for several hours while he works. The children have several cousins they play with at Ms. Hicks' home. Mr. Craft admitted to having an estranged relationship with two of his four grown daughters and has no cousins or friends nearby for the children to interact with.
Mr. Craft appeared unconcerned about certain health and safety issues that impact the children, such as the children wearing seat belts in cars and wearing helmets when riding four-wheelers. Mr. Craft testified that he did not consider this failure to wear seat belts dangerous. Additionally, Mr. Craft appeared less sensitive to the children's emotional needs. For example, he also testified that he saw nothing improper about telling a child to shut up.
Since 1998, not only has Ms. Hicks had most all of the financial responsibility for the children's needs, she has also paid for health insurance and all medical expenses not covered by health insurance. While there is an indication that Mr. Craft has had some financial difficulties, testimony showed that he has had the resources to buy other consumer items, to support himself and to remarry.
While there was testimony of both parties concerning their not wanting to facilitate the visitation of the other, Ms. Hicks did express willingness to work with Mr. Craft to facilitate his visitation. For example, Dr. Baker testified that Ms. Hicks asked him to get involved so as to get Shelbee to visit more readily with Mr. Craft. However, Mr. Craft indicated that since he did not feel that Ms. Hicks worked with him, he saw no need to work with her.
* * *
The relationship between Mr. Craft and Shelbee is problematic. It appears that Shelbee has been stubborn and has insisted on her own way. However, it appears regrettably that Mr. Craft has often acted in the same manner concerning Shelbee. Dr. Baker testified that originally Mr. Craft cooperated with the counseling, but then Mr. Craft would not follow through on many of Dr. Baker's suggestions. For example, Dr. Baker suggested encouraging visitation with Shelbee by Mr. Craft making many frequent calls and having short, frequent fun visits with Shelbee. Instead, the testimony showed that Mr. Craft has reacted to Shelbee's admittedly difficult behavior by not sending her birthday or Christmas gifts for several years and by getting rid of items that she had left at his house. Among other testimony, witnesses noted that Mr. Craft has failed to acknowledge Shelbee at school when he picks Bo up. It is understandable that Mr. Craft's feelings would be hurt by Shelbee's behavior; however, it does not facilitate a relationship when Mr. Craft responds to Shelbee in some of the ways mentioned above. Nevertheless, Dr. Baker testified that the best parent is both parents; Dr. Baker recognized that there will be some conflict in reestablishing a relationship between Shelbee and Mr. Craft. Dr. Baker further testified that despite this initial conflict, the long range potential damage to a child in not seeing a parent would be worse than the short term conflicts arising in trying to reestablish the exercise of this visitation.
Accordingly, the Court orders initially that Shelbee visit with Mr. Craft Wednesday after school until 8:00 p.m. on *1219 the Wednesdays that Bo is visiting with Mr. Craft. The Court also orders Saturday visits from 9:00 a.m. to 2:00 p.m. on the Saturdays that Bo is visiting. This Saturday visit should be increased an hour each visit until 8:00 p.m. is reached. This schedule should proceed for six (6) months, and then if all goes well, the visitation should add Wednesday and Saturday overnight. Of course, any additional time along the lines of Bo's visitation schedule that Shelbee requests should be allowed by the domiciliary parent. As a condition of visitation, Shelbee, Mr. Craft and Ms. Hicks are ordered to continue counseling during this time period to facilitate this visitation. Ultimately, the goal is to have Shelbee and Bo's visitation time with Mr. Craft coincide.
After considering extensive evidence on the issue of visitation, including testimony from three expert psychologists and numerous lay witnesses and conducting personal interviews with the children prior to making its ruling, the trial court found that it was in the best interest of the children for the parties to share physical custody of the children as set forth above. Specifically, the court felt that its plan would insure that the children had significant and frequent contact with both parents, but in a way that would minimize disruption in their school schedule and prevent further conflicts between the parties. We find no abuse of the trial court's discretion and will not disturb the court's ruling on appeal.

Child Support
Alfred takes issue with the trial court's failure to reduce or suspend his child support obligation based upon a decrease in his income and his lack of visitation with Shelbee.
In the November 1991 judgment, Alfred's child support obligation for the two children was set at $473 per month. Sheree was ordered to bear the cost of daycare as well as health insurance and all uncovered medical expenses. As of the trial of this latest rule, Alfred had not paid child support since January 1998 and as of the date of the trial court's judgment, rendered on July 12, 2001, he owed in excess of $18,000.[6]
La. C.C. art. 142 provides that an award of child support may be modified if the circumstances of the child or of either parent change and shall be terminated upon proof that it has become unnecessary. Prior to its amendment in 2001, La. R.S. 9:311(A) provided that:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.[7]
As reiterated by the supreme court in Stogner v. Stogner, 98-3044 *1220 (La.07/07/99), 739 So.2d 762, 769, requiring proof of a change of circumstances is, in general, valid, and is useful to prevent relitigation of the same issues and to protect the finality of judgments and compromises. A change of circumstances is a change material to the well-being of the child and his or her support that has occurred since the rendering of the original award. Id., citing BLAKESLEY, LOUISIANA FAMILY LAW, § 16.16 at 16-37 (Michie 1996).
There is no bright line rule as to what constitutes a change of circumstances to warrant modification. Stogner, supra; Guinther v. Baird, 33,550 (La. App.2d Cir.10/06/00), 768 So.2d 847, writ denied, 00-3050 (La.11/27/00), 775 So.2d 1070. Instead, a change in circumstances is to be determined on a case-by-case basis and clearly falls within the discretion of the trial court. Inasmuch as each case depends on the particular facts involved, an appellate court will not disturb the trial court's determination absent a clear abuse of discretion. Stogner, supra; Neill v. Neill, 33,398 (La.App.2d Cir.06/21/00), 764 So.2d 235.
As the party seeking reduction of his child support obligation, Alfred had the burden of proving that modification was warranted, i.e., that a change of circumstances sufficient to justify the decrease had occurred. Regarding his alleged decrease in income, the trial court found that while Alfred has experienced some financial difficulty, the evidence also showed that he had ample financial resources with which to buy other consumer items, to support himself and to remarry. Alfred owns and operates a dirt contracting business which paid his debt obligation on his home and vehicle as well as numerous other living expenses. In fact, Alfred planned to sell the business, retire and move to Arkansas. Regarding Alfred's request for a suspension of his support obligation, the trial court noted that there was absolutely nothing in the record to indicate that Sheree prevented Alfred from exercising visitation with the children such that a suspension, whether in part or in whole, was warranted. We find no error in the trial court's conclusion that Alfred failed to meet his burden of proof on this issue and will therefore not disturb that portion of the trial court's judgment.

Calculation of Legal Interest
Finally, Alfred asserts, and Sheree agrees, that the trial court erred in calculating legal interest on past-due child support. Therefore, we will amend the trial court's judgment to reflect that, rather than from the date of judicial demand, legal interest is to be calculated on each payment as it became due and payable.

Conclusion
Therefore, for the reasons set forth above, the judgment of the trial court is AMENDED IN PART to reflect that legal interest is to be calculated on each payment as it became due and payable. In all other respects, the judgment is AFFIRMED. Costs are assessed to defendant-appellant, Alfred McKinley Craft.
NOTES
[1] Alfred's Saturday visits with Shelbee were to be increased an hour each visit until their time together was from 8:00 a.m. to 8:00 p.m. An award of overnight visitation was predicated upon Alfred's, Sheree's and Shelbee's participation in counseling.
[2] Dr. Baker is the psychologist who was counseling the children.
[3] The judgment does not directly dispose of Alfred's request for a decrease in and/or partial termination of child support, an income tax dependency exemption or for appointment of another psychologist in the stead of Dr. Baker. Apparently, all of these requests were denied. In any event, Alfred has not assigned as error in the instant appeal the trial court's tacit denial of his request for a dependency exemption or his request to have another psychologist appointed.
[4] The court set forth the specifics of Mr. Craft's visitation with Shelbee in a later portion of its reasons for ruling.
[5] The court also ordered that the weekend visitation be set up so that the children were with Ms. Hicks on the weekends that her husband had visitation with his children.
[6] Alfred filed a similar rule to decrease his support obligation in 1995, urging that his monthly obligation was subject to reduction based upon an increase in his visitation with the children one day per week as a result of an interim custody agreement. This court, in an unpublished opinion, affirmed the trial court's rejection of Alfred's request, finding that he had failed to bear his burden of showing a change in circumstances between the time of the previous award and the time of the motion for modification.
[7] La. R.S. 9:311(A) was amended by Acts 2001, No. 1082, § 1, as follows:

An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a material change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
As noted by the Louisiana State Law Institute, this provision is applicable to actions concerning child support filed after August 15, 2001.