877 So.2d 1061 (2004)
Kay Pedigo JONES, Plaintiff-Appellee
v.
John Daniel JONES, Defendant-Appellant.
No. 38,790-CA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2004.
*1064 The Boles Law Firm by Robert Alan Breithaupt, Monroe, for Appellant.
Donald L. Kneipp, Monroe, for Appellee.
Before BROWN, PEATROSS, and MOORE, JJ.
BROWN, C.J.
This appeal arises out of rulings incidental to the divorce of Kay Cherie Pedigo *1065 Jones ("Cherie") and John Daniel Jones ("Danny"). For the reasons set forth below, we amend in part and, as amended, affirm.

Facts and Procedural Background
Danny and Cherie were married on November 18, 1994. Two children were born to the couple: a daughter, Shelby, on September 3, 1997, and a son, Benjamin, on February 28, 2000. After several separations and reconciliations during the course of their marriage, the parties separated in August 2002 and Cherie filed for divorce that same month, seeking joint custody and designation as domiciliary parent, as well as awards of child and spousal support. In his answer, Danny filed a reconventional demand for divorce, sought domiciliary custody, and asserted that Cherie's fault should preclude an award of permanent spousal support.
An interim order was entered on November 19, 2002, providing that Cherie would have domiciliary custody of the children, with Danny having visitation on an alternating basis of three nights one week, two nights the next week.[1] Thereafter, on March 24, 2003, a second order was entered, awarding Cherie interim spousal support in the amount of $5,000 per month[2] and child support in the amount of $3,500 per month. A judgment of divorce was rendered on May 8, 2003.
A hearing was held over the course of several months in the summer of 2003. The trial court's written reasons were issued on October 31, 2003, and a judgment was signed and filed on November 24, 2003. The court's judgment provided for:
(1) joint custody, with Cherie as domiciliary parent and Danny having specified weekend, holiday and summer visitation;
(2) Danny to pay child support in the amount of $4,000 per month;
(3) Danny to maintain health insurance on the children and bear the cost of all medical, dental, prescription, and orthodontic expenses not covered by insurance;
(4) Danny to pay interim spousal support in the amount of $5,000 per month; and
(5) Cherie to pay $625 per month to Danny for use of the matrimonial home.
The judgment further found that Cherie was free from legal fault in the dissolution of the parties' marriage, although an award of permanent spousal support was not made at that time. It is from this judgment that Danny has appealed.

Discussion

Child Custody
The trial court's award of joint custody and designation of Cherie as domiciliary parent are not contested. Danny simply asserts that his time with the children is inadequate.
The trial court awarded Danny visitation with the children as follows: alternating weekend visitation during the school year from Friday after school until Sunday at 6:00 p.m.; three hours every Wednesday afternoon during the school year; most of the summer, except for three one-week periods and alternating weekends, during which the children will be with Cherie; and specified holidays.
Taking issue with the fact that the trial court's visitation schedule gives him only 102-106 overnight visits per year, Danny contends that his contact with the children is insufficient and asks this court to increase *1066 his visitation in accordance with the recommendations of Dr. E.H. Baker, the court-appointed psychologist.[3]
La. R.S. 9:335(2)(a) provides that in decrees of joint custody, the implementation order shall allocate time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents. Subsection (2)(b) further states that, to the extent it is feasible and in the best interest of the child, physical custody of the child should be shared equally.
The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. Collins v. Collins, 36,629 (La.App.2d Cir.10/23/02), 830 So.2d 448; Craft v. Craft, 35,785 (La.App.2d Cir.01/23/02), 805 So.2d 1213; Nichols v. Nichols, 32,219 (La.App.2d Cir.09/22/99), 747 So.2d 120. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Collins, supra; Craft, supra; Ellinwood v. Breaux, 32,730 (La.App.2d Cir.03/01/00), 753 So.2d 977; Nichols, supra. Joint custody does not necessarily mean a fifty-fifty sharing of time. Collins, supra; Nichols, supra.
Each child custody case must be viewed in light of its unique facts and circumstances with the principal goal of reaching a decision that embodies the best interest of the child. Collins, supra; O'Brien v. O'Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933. A determination in each case will depend on the child's age, the parents' situations, and other factors relevant to that particular custody dispute. Craft, supra; Nichols, supra.
Regarding the testimony of an expert in a custody matter, after weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the expert's professional qualifications and experience and the facts upon which the opinion is based. It is within the trial court's discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole. Derbigny v. Derbigny, 34,672 (La.App.2d Cir.04/06/01), 785 So.2d 989; Warlick v. Warlick, 27,389 (La.App.2d Cir.09/29/95), 661 So.2d 706.
The trial court's determination regarding child custody is entitled to great weight and will not be disturbed absent a clear abuse of discretion. Collins, supra; Craft, supra; Ellinwood, supra. As noted by the court in Wilson v. Wilson, 30,445 (La.App.2d Cir.04/09/98), 714 So.2d 35, an appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion.
As noted above, Danny feels that the trial court erred in not awarding visitation as recommended by Dr. Baker. An examination of the entirety of Dr. Baker's testimony, however, reveals that the psychologist backed away from his initial recommendation after evidence was presented which showed that Shelby's grades had suffered as a result of being with her father on school nights. Dr. Baker further testified that if Danny's co-parenting behavior did not improve, Shelby would continue *1067 to have problems. Dr. Baker opined, and the trial court found, given Danny's behavior over the course of these proceedings (refusal to allow Cherie telephone contact with the children and failure to share Shelby's testing and related school information with Cherie), that there was no indication that he would in fact change.
In fashioning the details and specifics of the joint custody plan in the instant case, the trial court discussed extensively the factors set forth in La. C.C. art. 134. The following is excerpted from the court's written reasons:
Mother has clearly demonstrated that she is the parent who was intimately involved in the spiritual guidance, education, and rearing of the children. She was the parent who made the decisions concerning the educational and spiritual needs of the children. She has both the capacity and disposition to provide these needs.... [T]he evidence failed to establish that [Father] had the disposition to provide for these needs.
....
Mother has exclusive use of the former matrimonial domicile where the children have lived since 2000. Father has recently purchased a new home in West Monroe where he lives with his new wife and her two children. This factor weighs in favor of Mother as the children are accustomed to their own home and neighborhood and are not accustomed to living with their stepmother and her children with whom they will be sharing bedrooms.
....
... If Father's testimony is to be believed, then he has married a woman whom he has known for less than three months. He now has two stepchildren and lives in a new home. Father lacks the ability to provide a stable home life for the children as evidenced by his leaving the matrimonial domicile on three occasions. Additionally, it is apparent from the evidence that Father will likely resume his prior work schedule now that this litigation has concluded, and thus the children will be cared for by his new wife whom the children have known for an extremely short period of time. Mother, on the other hand, has remained the only constant factor in the children's lives.
....
The record is replete with instances of Father's failure to cooperate or communicate with Mother concerning the needs and well-being of the children. Father failed to share schoolwork with Mother, failed to answer his telephone when Mother would call or to return her calls even on special occasions....
....
Mother has stayed at home with both children since she became pregnant with the parties' younger child. She has been the primary care taker of both children and has been very active in their lives. On the other hand, Father has been very successful in his home health business of which he owns an one-third interest. Prior to the commencement of these legal proceedings, he would go to work early and come home after work late.
The evidence showed that Father does not adhere to any routine where the children are concerned. While under his care, their bedtime and mealtime varied from night to night and he would take Shelby to gymnastics if "she felt like going." The evidence also showed that Father failed to discipline his children choosing instead to be a "fun" dad. On the other hand, the evidence showed that Mother provided an appropriate routine for the children as well as appropriate discipline.
....

*1068 The interim custody order provided for every weekend visitation for Father. This arrangement has not served the best interest of the children because it affords them no weekend time with their Mother and shifts visitation the night before Shelby's test day at school.
After considering the testimony and other evidence presented in this case, the trial court found that it was in the best interest of the children for the parties to share physical custody of the children as set forth above. Specifically, the court found that its plan would insure that the children had significant and frequent contact with both parents, but in a way that would minimize disruption of their school schedule and prevent further conflict between the parties. We find no abuse of the trial court's discretion and will not disturb the court's ruling on appeal.

Child Support
Danny contends that the trial court's award of $4,000 per month in child support is excessive and asks this court to reduce it to $2,800 per month. In the alternative, he suggests that a decrease in support is warranted for the summer months, when the children will be with him except for three weeks and alternating weekends with their mother.
La. R.S. 9:315.19 provides a schedule to be used to determine basic child support. Its listing stops at a combined adjusted gross monthly income of $20,000. At that level, for two children, the basic support amount is $2,647. However, La. R.S. 9:315.13(B) provides that if the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in La. R.S. 9:315.19, the court shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent, but in no event shall it be less than the highest amount set forth in the schedule.
The amount of child support in a specific matter is to be judged on a case-by-case basis; there is no mathematical formula. Reeves v. Reeves, 36,259 (La.App.2d Cir.07/24/02), 823 So.2d 1023; Bagwell v. Bagwell, 35,728 (La.App.2d Cir.03/08/02), 812 So.2d 854; State v. Baxter, 33,188 (La.App.2d Cir.05/10/00), 759 So.2d 1079. A parent's ability to pay and the lifestyle that the children would have enjoyed had the parents not separated are important considerations. Id. The overriding factor in determining the amount of support is the best interest of the children. Reeves, supra; Bagwell, supra. Under the clear provisions of La. R.S. 9:315.13, the trial court must use its discretion in setting the amount of the basic child support obligation when the gross income of the parties exceeds the highest figure provided by the schedule, and its judgment in such matters will not be disturbed in the absence of a showing of an abuse of discretion. Verges v. Verges, 01-0208 (La.App. 1st Cir.03/28/02), 815 So.2d 356, writ denied, 02-1528 (La.09/20/02), 825 So.2d 1179.
It is undisputed that Cherie, a stay-at-home mother, has no income, and that Danny's income exceeds $20,000 per month. In fact, the trial court found that Danny's monthly income ranged from $31,250 to $33,750 per month. In awarding child support of $4,000 per month, the trial court made the following observations:
Under any financial scenario that Father presented to this court, his monthly gross income significantly exceeds $20,000 per month, which is the maximum income amount shown in the guidelines. Under these circumstances, the court is authorized to deviate from the guidelines; however, a child support *1069 amount cannot be less than the maximum amount of $2,647 provided therein for two children.
In this particular case, the court considers the fact that the Jones family enjoyed a rather lavish lifestyle. The evidence belies Father's description of their lifestyle as modest. They lived in a large and expensive home in West Monroe furnished by an interior decorator at a handsome price. Both parents drove expensive vehicles and they owned a camp, rental property, recreational vehicles and another lot on which they planned to build another home. The children enjoyed extracurricular activities, entertainment, vacations and expensive clothing.
As noted by this court in Reeves, supra at 1027, children are entitled to support in an amount to maintain them in the style commensurate with the standard of living the family enjoyed before the marriage terminated. Inasmuch as the record contains a reasonable factual basis for the trial court's award in the instant case, we decline to disturb it on appeal.
We will now address Danny's request for a decrease in his support obligation for the summer months each year.
La. R.S. 9:315.8(E) provides in pertinent part:
(1) In cases of joint custody, the court shall consider the period of time spent by the child by the nondomiciliary parent as a basis for adjustment to the amount of child support to be paid during that period of time....
(3) In determining the amount of credit to be given, the court shall consider the following:
(a) The amount of time the child spends with the person to whom the credit would be applied.
(b) The increase in the financial burden placed on the person to whom the credit would be applied and the decrease in financial burden on the person receiving child support.
(c) The best interests of the child and what is equitable between the parties.
(4) The burden of proof is on the person seeking the credit pursuant to this Subsection.
An automatic deviation from the child support guidelines is not allowed. Guillot v. Munn, 99-2132 (La.03/24/00), 756 So.2d 290. All that is required by this statute is that the trial court consider the period of time spent with the nondomiciliary parent as a basis for adjustment of the child support obligation. Falterman v. Falterman, 97-192 (La.App. 3d Cir.10/08/97), 702 So.2d 781, writ not considered, 98-0076 (La.03/13/98), 712 So.2d 863. It also, importantly, requires the court to make this consideration in light of the domiciliary parent's continuing expenses and the contribution made by the nondomiciliary parent to the children's needs. State in the Interest of Travers, 28,022 (La.App.2d Cir.12/06/95), 665 So.2d 625; Falterman, supra; Green v. Green, 95-307 (La.App. 3d Cir.10/04/95), 663 So.2d 277. La. R.S. 9:315.8(E) does not mandate an adjustment for time spent, nor does it remove from the trial court the discretion to decide whether to make an adjustment. Falterman, supra; Temple v. Temple, 94-1244 (La.App. 3d Cir.03/01/95), 651 So.2d 466. There is no hard and fast rule to determine just how much, if any, to reduce the child support obligation based on the percentage of time the children live with either parent. Falterman, supra; In the Matter of Burkenstock, 95-586 (La.App. 5th Cir.12/13/95), 666 So.2d 1168.
While the trial judge's written reasons for judgment do not show that she considered this provision in setting Danny's child support obligation, we nonetheless find that, while the children spend approximately 28% of their time with their *1070 father, the majority of this being during the summer months, the children's ongoing expenses provided by their mother will be unaffected during the time they are with Danny. As noted by the court in Falterman, supra, courts have consistently refused to grant a reduction where the expenses of a domiciliary parent remain constant. See In the Matter of Burkenstock, supra; Corley v. Corley, 600 So.2d 908 (La.App. 4th Cir.1992). Furthermore, the trial court found that Danny lacked the disposition to provide for the children's material needs in the manner he provided during the marriage, due to his recent remarriage and refusal to provide any support for Cherie and the children during the pendency of these proceedings until ordered to do so.
In light of the facts and circumstances of this case, particularly the fact that Danny's monthly child support obligation is a mere 11-12% of his monthly income, we decline to grant a reduction in child support to Danny for the time that the children spend with him.

Fault
Danny argues that the trial court erred in concluding that Cherie was free from fault in the dissolution of their marriage. Specifically, he asserts that the breakup of their marriage was caused by Cherie's inappropriate relationship with Greg Eberts, the husband of her friend, Carmen Eberts. While Danny has not taken issue with the trial court's conclusion that the evidence did not establish that Cherie and Greg were involved in an adulterous or romantic relationship, he contends that Cherie's friendship with Greg constituted cruel treatment.
Fault is a threshold issue in a claim for spousal support. In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. Roan v. Roan, 38,383 (La.App.2d Cir.04/14/04), 870 So.2d 626; Lyons v. Lyons, 33,237 (La.App.2d Cir.10/10/00), 768 So.2d 853, writ denied, 00-3089 (La.01/05/01), 778 So.2d 1142.
Fault continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation or divorce. Revision Comment (c) of 1997, La. C.C. art. 111; Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359; Roan, supra; Jones v. Jones, 35,502 (La.App.2d Cir.12/05/01), 804 So.2d 161. Fault that precludes an award of spousal support must have occurred prior to the filing of the action for divorce, in this case, August 12, 2002. Legal fault may include, among other things, habitual intemperance or excesses, cruel treatment or outrages, abandonment, and adultery. Roan, supra; Mayes v. Mayes, 98-2228 (La.App. 1st Cir.11/05/99), 743 So.2d 1257. A spouse who seeks permanent support need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault. Roan, supra; Lyons, supra.
Domestic relations issues such as the determination of entitlement to spousal support largely turn on evaluations of witness credibility. Skannal v. Skannal, 25,467 (La.App.2d Cir.01/19/94), 631 So.2d 558, writ denied, 94-0697 (La.05/13/97), 637 So.2d 1067. The trial court has vast discretion in matters regarding determination of fault for purposes of precluding final periodic support. The trial judge's finding of fact on the issue of fault will not be disturbed unless it is manifestly erroneous or clearly wrong. Roan, supra; Lyons, supra; Skannal, supra.
*1071 The following is excerpted from the trial court's written reasons for judgment:
The court finds that the evidence presented does not establish fault to the degree necessary to preclude Mother from receiving permanent periodic support.
Father sought to prove two separate episodes in an effort to establish his case for fault. One dealt with Mother traveling to Jack Blocker's house on the night of October 3, 2002, where she stayed for several hours. This occurred after the original petition for divorce and the reconventional demand had been filed. Therefore, this action, because of when it occurred, could not have rendered the marriage insupportable since cross-petitions were already pending. Furthermore, the evidence offered, including the credible testimony of Jack Blocker, does not prove adultery or cruel treatment.
The other episode dealt with an alleged romance between Greg Eberts and Mother. Apparently, Father recorded telephone conversations between Mother and Mr. Eberts, although when asked that question, he invoked his Fifth Amendment privilege against self-incrimination and refused to answer. However, Carmen Eberts, wife of Greg, testified that Father played such tapes for her. Mr. Eberts admitted that he did speak to Mother on the phone on a number of occasions, and often on a daily basis. He admitted that this type of conduct on his part was not appropriate. However, Greg Eberts did testify that he was the one that initiated the majority of the phone calls and that Mother did not encourage him to pursue any type of romantic relationship. There was also testimony concerning Mother's suggestive and provocative attire worn in the presence of Mr. Eberts. Both Mother and Mr. Eberts denied any sexual involvement with each other.
The court has previously outlined the circumstances which Father placed Mother in during 2002 and the steps which he took to plan for their ultimate divorce.[4] Despite the innumerable allegations of cruel treatment made by Father against Mother, none are supported by the evidence nor do they rise to the level of cruel treatment. The court finds Mother free from legal fault. Thus, Mother is entitled to an award of permanent periodic spousal support the amount of which is not at issue in these proceedings.
In light of the above legal principles, as well as the testimony presented on this issue, we are unable to say that the trial court's finding that Cherie was free from legal fault in the dissolution of the parties' marriage is either manifestly erroneous or clearly wrong.

Interim Spousal Support
Danny next contends that the trial court's award of $5,000 per month in interim spousal support is excessive. He points out that $5,000 per month, when combined with the child support award of $4,000 per *1072 month, has him paying Cherie $9,000, which is $1,342.19 more than the total expenses per month she alleged for herself and the children, $7,657.81, without even subtracting from this amount expenses Danny asserts are unreasonable and therefore not to be included in calculating interim spousal support.
A spouse may be awarded an interim allowance based on the needs of that spouse, the ability of the other spouse to pay and the standard of living of the spouses during the marriage. La. C.C. art. 113; Hitchens v. Hitchens, 38,339 (La.App.2d Cir.05/12/04), 873 So.2d 882; Bagwell v. Bagwell, 35,728 (La.App.2d Cir.03/08/02), 812 So.2d 854; Clark v. Clark, 34,314 (La.App.2d Cir.11/01/00), 779 So.2d 822, writ denied, 00-3196 (La.01/12/01), 781 So.2d 563. A spouse's right to claim interim periodic support is based on the statutorily imposed duty of the spouses to support each other during their marriage. Bagwell, supra; McAlpine v. McAlpine, 94-1594 (La.09/05/96), 679 So.2d 85.
The purpose of interim spousal support is to maintain the status quo without unnecessary financial dislocation until a final determination of support can be made. Hitchens, supra; Stephenson v. Stephenson, 37,323 (La.App.2d Cir.05/14/03), 847 So.2d 175. The needs of the claimant spouse, in this case, the wife, have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband's ability to pay. Hitchens, supra; Braswell v. Braswell, 494 So.2d 1333 (La.App. 2d Cir.1986); Whatley v. Whatley, 430 So.2d 129 (La.App. 2d Cir.1983).
In order to demonstrate need for interim periodic spousal support, the claimant has the burden of proving that she lacks sufficient income or the ability to earn a sufficient income to maintain the standard of living that she enjoyed during the parties' marriage. Hitchens, supra; Bagwell, supra; Thomey v. Thomey, 33,000 (La.App.2d Cir.04/07/00), 756 So.2d 698.
The trial court is afforded much discretion in determining an award of interim spousal support. Such a finding will not be disturbed absent a clear abuse of discretion. Bagwell, supra; McDermott v. McDermott, 32,014 (La.App.2d Cir.06/16/99), 741 So.2d 186.
We agree with Danny that the trial court erred in awarding Cherie more per month than the amount shown in her affidavit of expenses. Therefore, we will amend the trial court's judgment to reflect an interim support award of $3,650 per month rather than $5,000 each month. We decline, however, to reduce Cherie's interim spousal support award further, noting again that, insofar as temporary support is concerned, Cherie is entitled to an amount which is in keeping with the standard of living enjoyed by the spouses during their marriage. See Hitchens, supra; Bagwell, supra. Having reviewed the affidavit showing Cherie's monthly expenditures, we observe that some of these expenses will be reduced or excluded entirely for purposes of calculation of final periodic support.[5]

*1073 Conclusion

For the reasons set forth above, the trial court's judgment is amended to reduce the interim spousal support awarded to Cherie Jones from $5,000 to $3,650 per month. In all other respects, the trial court's judgment is affirmed. Costs of this appeal are assessed one-fourth to Cherie and three-fourths to Danny.
AMENDED, and, AS AMENDED, AFFIRMED.
NOTES
[1] The parties and children were also required to undergo an evaluation with Dr. E.H. Baker, psychologist.
[2] Danny was also ordered to continue payment of the house note on the matrimonial domicile.
[3] Dr. Baker's recommendations entailed longer alternating weekends, from Thursday evenings until Monday mornings during the school year, and additional weekday visits during the weeks that Danny does not have weekend visitation. This would result in the children spending an additional 37-45 nights per year with their father.
[4] The trial court observed:

In the first year of their marriage, Father left the matrimonial domicile and filed a petition for divorce; however, the parties reconciled approximately a month later. On another occasion, after the birth of their first child, Father again laid plans to leave the matrimonial domicile, but changed his mind after Mother begged him not to leave. A third separation occurred during the Christmas holidays of 2001 when Father left for approximately six (6) weeks. The parties went to counseling and reconciled briefly.
After the reconciliation, Father closed their joint checking account and refused to provide Mother and children with support. Ultimately, Mother filed a petition for divorce on August 12, 2002, and Father filed an answer ... on August 27, 2002.
[5] As noted by this court in Guillory v. Guillory, 626 So.2d 826 (La.App. 2d Cir.1993), permanent spousal support is not governed by the guidelines for interim spousal support. Spousal support after divorce is intended to provide for the maintenance of the spouse, as opposed to continuing an accustomed style of living. Gibbs v. Gibbs, 33,169 (La.App.2d Cir.06/21/00), 764 So.2d 261; Brewton v. Brewton, 30,134 (La.App.2d Cir.01/21/98), 705 So.2d 799. Maintenance includes the basic necessities of life, such as food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony payments. McLaughlin v. McLaughlin, 29,213 (La.App.2d Cir.04/02/97), 691 So.2d 834.