# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-0795


**SHAWANNA MARIE CARRIER LOFTIN**[*]

**VERSUS**

**GLEN EDWARD LOFTIN**


************

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 79,579-C
HONORABLE JAMES RICHARD MITCHELL, DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and David E. Chatelain,[**] Judges.


**AFFIRMED AS AMENDED.**


**Charles A. "Sam" Jones, III**
**Attorney At Law**
**P. O. Box 995**
**DeRidder, LA 70634-0995**
**(337) 463-5532**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Shawnna Marie Carrier Loftin**

**Scott Westerchil**
**Attorney at Law**

---

[*]We note that although the record spells the plaintiff's first name "Shawanna," plaintiff herself spells her name "Shawnna."

[**]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**301 South 3rd Street**
**Leesville, LA 71446**
**(337) 238-0019**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Glen Edward Loftin**

PETERS, J.

Glen Edward Loftin appeals a trial court judgment awarding his wife, Shawnna Marie Carrier Loftin, child support and interim spousal support. For the following reasons, we amend the trial court judgment and affirm it as amended.

**DISCUSSION OF THE RECORD**

Glen Edward Loftin and Shawnna Marie Carrier Loftin were married in July of 1997, and physically separated on April 3, 2008. On May 1, 2008, Mrs. Loftin filed a petition for divorce based on the provisions of La.Civ.Code art. 102, *et seq*. In her initial petition, Mrs. Loftin sought, along with other relief, custody of the two minor children born to the couple, Daniel Edward Loftin (born March 26, 1997) and Wayne Cooper Loftin (born on January 26, 1999); an award of child support; and an award of interim spousal support. Mr. Loftin responded to the petition with a reconventional demand wherein he sought, along with other relief, to have the trial court award the couple joint custody of the children.

After a September 4, 2008 hearing, the trial court rendered judgment on a number of issues, including custody. In that judgment, the trial court awarded joint custody of the children to the couple, but named Mrs. Loftin as primary domiciliary parent. The trial court continued the child and spousal support issues to a December 15, 2008 hearing. The trial court subsequently continued the December 15 hearing to March 19, 2009.

The evidence adduced at the March 19 hearing established that during the marriage, Mr. Loftin had been self-employed, operating his own eighteen-wheeler truck when business opportunities arose. There exists some dispute concerning when and how the business dissolved,[1] but it is undisputed that from September of 2009

---

[1]Mr. Loftin testified that he dissolved the business during the latter days of the marriage with Mrs. Loftin's consent because of rising fuel prices. On the other hand, Mrs. Loftin testified that he

until the time of trial, Mrs. Loftin had physical possession of the eighteen-wheeler used in the business and had it parked at her father's house. Her possession came about because Mr. Loftin had filed for bankruptcy relief soon after leaving her.[2]

By the time the issues now before us went to trial, Mr. Loftin had obtained employment with Cubic Worldwide Tech Services driving a company truck. His new employer paid him $15.78 per hour on a regular basis, but he was able to receive some overtime when work was available. The payroll check stub for the period from February 14, 2009 through February 27, 2009, reflects that Mr. Loftin had earned $8,646.44 with the company since the beginning of 2009. However, he testified that because his hours are based on the availability of work at Fort Polk, Louisiana, he had not worked at all between February 27, 2009, and the date of trial. Mr. Loftin's income and expenses affidavit reflects a gross monthly income of $3,034.00.[3]

By the time of trial, Mrs. Loftin had obtained employment with Leesville Dialysis in Leesville, Louisiana. In that job, she regularly made $9.27 per hour, but often worked overtime. In support of her request for spousal support, Mrs. Loftin introduced payroll check stubs for the period immediately before the trial, as well as her 2008 W-2 form and her 2008 federal income tax return. The most recent of the payroll check stubs covered the period from February 22, 2009 through March 3, 2009, and reflected a gross income of $652.17, a net payment of $542.14, and a total gross income for the year to date of $4,706.61. Her 2008 W-2 form reflected gross

---

dissolved the business almost immediately after he left her in April of 2008.

[2]At the time of trial, Mrs. Loftin had also filed for bankruptcy protection. The eighteen-wheeler is listed in both bankruptcy proceedings and nothing in the record suggests whether the parties will be able to keep the vehicle when emerging from bankruptcy protection.

[3]He claims to have reached this figure by extrapolating the wages paid to date through the remainder of the year and dividing accordingly.

wages of $19,309.59 for that year, and her 2008 federal income tax return reflected

no additional income. Mrs. Loftin also introduced the couples' joint federal tax

returns for 2005 through 2007. Those returns reflected that they reported $24,512.00

as their adjusted gross income for 2005,[4] $24,908.00 for 2006,[5] and $29,734.00 for

2007.[6] However, Mrs. Loftin also introduced other financial records suggesting that

a significant amount of the business deductions claimed each year were funds actually

deposited into a "house account" and used to pay personal bills. She testified that the

amount deposited in the house account in 2007 totaled $52,080.00.

In rendering judgment, the trial court recognized that the bankruptcies rendered

the financial status of the parties prior to their separation useless in its analysis of the

issues then before it. That being the case, the trial court factually found that Mrs.

Loftin's gross monthly income was $1,609.00, and Mr. Loftin's gross monthly

income was $3,034.00. Based on a total gross income of $4,643.00, the trial court

applied La.R.S. 9:315.19 (the Louisiana Child Support Guideline Table) and set the

basic child support obligation at $1,153.00 per month.[7] The trial court then adjusted

the basic child support obligation by adding child care expenses, medical insurance,

and counseling expenses to increase the total support obligation to $1,981.00.

Because Mr. Loftin's gross income is sixty-five percent of the total gross income of

_____

[4]The 2005 tax return reflected that while Mr. Loftin's personal business had gross receipts of $137,505.00, the net profit for the business was only $23,872.00.

[5]The 2006 tax return reflected that while Mr. Loftin's personal business had gross receipts of $135,367.00, the net profit for the business was only $24,142.00.

[6]The 2007 tax return reflected that while Mr. Loftin's personal business had gross receipts of $130,922.00, the net profit for the business was only $21,041.00.

[7]While the trial court did not specifically reference La.R.S. 9:315.19 in its oral reasons for judgment, it is clear from the amount of the obligation reached that the source of that amount is the statute.

the couple, the trial court set his child support obligation at sixty-five percent of $1,981.00, or $1,287.00 per month.

The trial court then awarded Mrs. Loftin $900.00 per month as interim spousal support. However, in making the award, the trial court stated only that "obviously, Mrs. Loftin has some expenses." The trial court then made both awards retroactive to May 1, 2008, the date Mrs. Loftin filed her petition for divorce.

Mr. Loftin has appealed this judgment, asserting four assignments of error:

> The trial court erred in its calculation of the child support award of $1,287.00 in adding to the basic child support obligation alleged child care costs and counseling expenses wherein said alleged costs were not proven at trial.

> The trial court erred in its calculation of the child support award in failing to reduce the basic child support taking into consideration the amount of time the children would spend with their father during the specified visitation.

> The trial court erred in awarding interim spousal support in the amount of nine hundred dollars per month unto Shanna Loftin [sic], or alternatively the trial court erred in that the amount awarded was excessive.

> The trial court erred in making the interim spousal support retroactive to the date the divorce petition was filed.

## OPINION

### *Assignment of Error Number One*

In his first assignment of error, Mr. Loftin asserts that the trial court erred in adding child care expenses and counseling expenses to the child support obligation because Mrs. Loftin did not establish the need or amount of those expenses at trial. While we find some merit in this assignment of error, our calculations reflect little difference in the obligation imposed by the trial court and our conclusion.[8]

---

[8]The trial court added $828.00 to the basic child support obligation without specifying how much of the increase was credited to insurance costs, child care, or counseling.

Mrs. Loftin testified that she pays $179.00 every two weeks for insurance to cover the children. Mr. Loftin does not contest this amount or the fact that the trial court added insurance expenses into the basic child support obligation. By our calculations, the addition should be $387.83 per month [(179.00 x 26) ÷ 12]. With this amount factored in, the adjusted basic child support obligation increases to $1,540.83 ($1,153.00 + $387.83).

With regard to child care expenses, Mrs. Loftin testified that she pays $400.00 per month. While Mr. Loftin questioned the lack of receipts for this expenditure, he did not seriously question the need for child care during Mrs. Loftin's working hours. We find no error in the trial court's acceptance of Mrs. Loftin's testimony on this issue and its addition of this amount to the basic child support obligation. With this amount factored in, the adjusted basic child support obligation increases to $1,940.83 ($1,540.83 + $400.00).

We do agree with Mr. Loftin that the counseling expenses should not have been added. Mrs. Loftin testified that the older child is being counseled and that her share of the expense is $35.00 per week. However, she did not identify the counselor nor did she explain the basis for the counseling. In other words, we have only her self-serving testimony on this issue. Therefore, to the extent that the trial court considered this expense, we find this to be error.

Without regard to the counseling expense, the adjusted basic child support obligation is still $1,940.83. Sixty-five percent of $1,940.83 is $1,261.54. Thus, we adjust Mr. Loftin's monthly obligation from $1,287.00 to $1,262.00.

### Assignment of Error Number Two

In his second assignment of error, Mr. Loftin argues that the trial court abused its discretion by failing to adjust his child support obligation to reflect the amount of time that the children are in his care. Specifically, he argues that he should not be required to pay child support for the weekends, holidays, and summer period that he has physical custody. Louisiana Revised Statutes 9:315.8(E) does allow for a decrease in the amount of child support owed by the non-custodial parent if that parent retains physical custody of the child for at least seventy-three days out of the year. This credit due to the noncustodial parent is considered a deviation from the child support guidelines. However, this deviation is not automatic.

> Rather, the party urging the reduction in the child support obligation based on the amount of time spent with the child must bear the burden of proving that he or she exercises shared custody or extraordinary visitation with the child, that the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the domiciliary parent, and, finally, that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties.

*Guillot v. Munn*, 99-2132, p. 1 (La. 3/24/00), 756 So.2d 290, 292.

As the parent seeking the deviation, Mr. Loftin bears the burden of proving that he exercised extraordinary visitation with the two minor children. However, at no time in the trial court below did Mr. Loftin raise the credit question. Based on Mr. Loftin's failure to raise it in the trial court, we will not address the issue on appeal. Uniform Rules—Courts of Appeal, Rule 1-3.

### Assignment of Error Number Three

In his third assignment of error, Mr. Loftin argues that the trial court's award of $900.00 for interim spousal support was in error or, alternatively, was excessive. We agree that the award was excessive based on the record before us.

6

Louisiana Civil Code Article 113 provides that, during the pendency of a divorce action, a spouse may petition the trial court for an award of interim spousal support. This award, if granted, is based on the needs of the spouse, the ability of the other spouse to pay, and the standard of living the couple enjoyed during their marriage. *Id.* The intent of interim spousal support is to allow the spouse seeking such assistance to maintain a standard of living pending the outcome of the divorce status quo with that maintained during the marriage. *Smoloski v. Smoloski*, 01-485 (La.App. 3 Cir. 10/3/01), 799 So.2d 599.

> A spouse's right to claim interim periodic support "is grounded in the statutorily imposed duty on spouses to support each other during marriage, and thus, provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation." *Brar v. Brar*, 01-370, p. 5 (La.App. 3 Cir. 10/3/01), 796 So.2d 810, 813. Interim support preserves parity in the levels of maintenance and support, and avoids "unnecessary financial dislocation until a final determination of support can be made." *Jones v. Jones*, 38,790, p. 15 (La.App. 2 Cir. 6/25/04), 877 So.2d 1061, 1072.
>
> . . . .
>
> A claimant demonstrates need for interim spousal support if she establishes that she lacks sufficient income or the ability to earn a sufficient income "to sustain the style or standard of living that [s]he enjoyed while [s]he resided with the other spouse." *January v. January*, 94-882, 94-883, p. 3 (La.App. 3 Cir. 2/1/95), 649 So.2d 1133, 1136; *Jones*, 877 So.2d 1061. The claimant spouse has the burden of proving his or her need. *Jones*, 877 So.2d 1061. The needs of the claimant spouse have been defined as "the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband's ability to pay." *Hitchens v. Hitchens*, 38,339, p. 2 (La.App. 2 Cir. 5/12/04), 873 So.2d 882, 884. For example, in *Thomey v. Thomey*, 33,000 (La.App. 2 Cir. 4/7/00), 756 So.2d 698, the court determined that the claimant had demonstrated need by establishing that she had insufficient income to meet her monthly expenses, which exceeded her income by over $1,000.00 per month. Awarding support also requires finding that expenses were reasonable. *Vassallo v. Vassallo*, 540 So.2d 1300 (La.App. 5 Cir.1989).

*Derouen v. Derouen*, 04-1137, pp. 4-5 (La.App. 3 Cir. 2/2/05), 893 So.2d 981, 984.

7

A trial court is granted vast discretion in deciding whether to award support in such instances, and its decision will not be reversed on appeal absent a clear abuse of that discretion. *Id.*

At the time of trial, Mrs. Loftin and her two children resided with her father. In that situation, her only household expenses were one-half of the approximately $400.00 per month utility bill and the cost of food for her and the children. Mrs. Loftin claims a need for interim spousal support based on her assertion that she and her two sons will soon move from her father's home. That move will require that she make deposits on utilities and pay rent and utilities. The only evidence of rental expenses is Mrs. Loftin's claim that she has inquired about rental property and, based on the prices in the area, she expects to pay $700.00 per month for a place of her own. She testified that she will also have to make a one-time deposit of $150.00 each for telephone, electricity, and gas hookup.

Apparently, based on this testimony, the trial court concluded that Mrs. Loftin "[o]bviously . . . has some expenses." That is to say, Mrs. Loftin established the "need" element of the interim spousal support award. We find no error in that conclusion of the trial court. However, Mrs. Loftin's obligation is not simply to prove a need for an award. She must also establish both the standard of living she and her husband enjoyed during the marriage and Mr. Loftin's ability to pay interim spousal support.

With regard to the standard of living element, a trier of fact could find that the record establishes that a large amount of the deductions on the tax returns filed during the marriage inaccurately included as a business deduction a large amount of money transferred annually into the house account, which was used to enhance the couple's

standard of living. Assuming that as fact, Mrs. Loftin clearly suffers a lower standard of living than that which she enjoyed during the marriage.

However, we find that Mrs. Loftin failed to establish that Mr. Loftin's ability to pay interim spousal support warrants a $900.00 per month award. The child support judgment, as modified by this court, has the effect of providing Mrs. Loftin with $2,871.00 per month ($1,609.00 + $1,262.00)[9] to cover the needs of her and the children and has the effect of providing Mr. Loftin with $1,772.00 per month ($3,034.00 – $1,262.00)[10] to cover his personal needs. At the same time, when the total child support obligation as provided for in La.R.S. 9:315.19 is deducted from Mrs. Loftin's monthly allotment, she is left with $930.00 ($2,871.00 – $1,941.00) for her own personal needs.

We find that the amount of interim spousal support awarded by the trial court is excessive and reduce that amount to $400.00 per month.

### Assignment of Error Number Four

In his final assignment of error, Mr. Loftin argues that the trial court abused its discretion by ordering that the interim spousal support award commence retroactive to May 1, 2008, the date Mrs. Loftin filed her petition for divorce. Mr. Loftin argues that since the issue of interim spousal support was not heard until March 19, 2009, good cause exists for the trial court to order that the support award commence effective at a date later than the initial filing date. We disagree.

Louisiana Revised Statutes 9:321(A) provides that, "[e]xcept for good cause shown, a judgment awarding, modifying, or revoking an interim spousal support

---

[9]We do note that the $1,609.00 is pre-tax income.

[10]Although the entire $1,772.00 is pre-tax income, we note that taxes will be deducted based on the $3,034.00.

9

allowance *shall* be retroactive to the date of judicial demand." (Emphasis added.) The trial court obviously determined that no good cause existed for setting the effective date at any time other than May 1, 2008, and we find no error in that determination.

## DISPOSITION

For the foregoing reasons, we amend the trial court judgment by reducing Glen Edward Loftin's monthly child support obligation to $1,262.00 and by reducing his monthly interim spousal support obligation to $400.00. We affirm all other aspects of the trial court judgment and tax the costs of this appeal equally between Glen Edward Loftin and Shawnna Marie Carrier Loftin.

**AFFIRMED AS AMENDED.**