998 So.2d 828 (2008)
Robert Charles EARLE, Plaintiff-Appellee
v.
Mary Anne Hill EARLE, Defendant-Appellant.
No. 43,925-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
Rehearing Denied December 19, 2008.
*831 Law Offices of T.J. Adkins, by T.J. Adkins, Ruston, for Appellant.
The Earle Law Firm, L.L.C., by Robert R. Earle, Farmerville, Donald L. Kneipp, Monroe, for Appellee.
Before CARAWAY, PEATROSS & DREW, JJ.
PEATROSS, J.
Mary Anne Hill Earle ("Andy") appeals the trial court's judgment on issues incidental to her uncontested divorce from Robert Charles Earle ("Chuck"). In particular, she argues that the trial court erred in awarding Chuck overnight and out-of-state visitation with the two minor children of the marriage. She further argues that the trial court erred in the amount of child support and spousal support awarded and in failing to award any amount for her contribution to the education and training of Chuck. For the reasons set forth below, we affirm the custody arrangement ordered by the trial court and its denial of any claim for reimbursement for educational expenses, but amend the awards for child support and spousal support.

FACTS
After 19 years of marriage and an attempt at reconciliation, Chuck and Andy divorced. During the marriage, the parties had three children: Katelyn Ann Earle, a major at the time of trial, Robert Pierce Earle, who was sixteen years old at the time of trial, and John Abram Earle, who was two years old at the time of trial. Also, during the marriage, Chuck completed a Masters of Science degree in electrical engineering and he received his juris doctorate in 1998.
The youngest child, John Abram Earle, has a chronic medical condition diagnosed as reactive airway disease (RAD), an asthma-type disease. To treat this condition, he requires the use of a nebulizer, a portable device used to provide a breathing treatment, along with various medications. He has related episodes of respiratory distress that are life-threatening unless immediately recognized and treated.
Pursuant to its oral reasons, the trial court granted joint custody with Andy designated as the domiciliary parent. The trial court granted Chuck standard visitation on every other weekend, summer vacation and alternating holidays *832 with Robert, with deference given the child's basketball schedule and his band and church activities. In regard to the youngest son, the trial court granted Chuck the same visitation as with Robert, but adjusted the visitation for the first year in consideration of the young child's medical condition. For the first year, all visitation is to be in North Louisiana and the summer visitation was reduced to 15 consecutive days in June and 15 consecutive days in July. The trial court further ordered that Chuck receive instruction by the health care professional on how to operate and administer a nebulizer. Chuck completed the instruction and filed a letter to that effect with the trial court.
The trial court ordered Chuck to maintain the children on his health insurance. It further ordered that Chuck's child support payments be set at $3,185 a month, but gave a credit of $350 per month for the health insurance premiums. The resulting child support payment was set at $2,878. After declining to find Andy at fault for the break up of the marriage, the trial court awarded her spousal support in the amount of $400 per month for 24 months and $250 per month for 36 months thereafter. The trial court declined to make an additional award for Andy's support of Chuck while he was in law school and his masters program.

DISCUSSION

Child Custody
Andy argues that Chuck's visitation is not in the best interest of the children and should be amended. In regard to the youngest child, John Abram, Andy argues that the child's medical condition prevents him from visiting overnight or out of state because Chuck does not have the experience to recognize when the child is having a life-threatening episode. She submits that these episodes are detected through a change in John Abram's breathing. The respiratory distress must be addressed quickly and the episode can last over a number of days. She asserts that, until John Abram can recognize and articulate that he is having trouble breathing, visitation with the child should not be out of state or overnight. She further argues that Robert should not be made to visit in Dallas where Chuck was living with a woman to whom he was not married.
As in every child custody determination, the primary consideration is the best interest of the child. La. C.C. art. 131; Adams v. Adams, 39,424 (La.App.2d Cir.4/6/05), 899 So.2d 726. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134.[1] Factors that may be considered are *833 set forth in Article 134, but the court is not bound to make a mechanical evaluation of each. Rather, a custody dispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child. Wages v. Wages, 39,819 (La.App.2d Cir.3/24/05), 899 So.2d 662.
Courts have inherent power to determine a child's best interest and to tailor a custody order, including visitation, that minimizes the risk of harm to the child. The trial court's findings in child custody matters are entitled to great weight and will not be disturbed on review without a showing of clear abuse. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Further, acts of adultery do not necessarily render a parent morally unfit who is otherwise suited to custody. Slack v. Slack, 26,036 (La.App.2d Cir.8/17/94), 641 So.2d 1059.
From our review of the record, we cannot find that the trial court erred in its child custody award. The testimony of Andy was that it took experience with John Abram to recognize when he was having difficulty breathing. We find her argument circular that Chuck cannot care for the child because he does not have the requisite experience, but he does not have the experience because he is not allowed to care for the child. Chuck has received training from a health care provider on the nebulizer to assure that if the need arose, he could use the device properly. Nothing in the record leads us to believe that Chuck will not be diligent in observing John Abram for respiratory distress or unable to address it if the need arises.
We further find no merit in Andy's argument that Chuck's living situation should prevent visitation by either child. The judgment includes a provision that neither party will be allowed to have an unrelated guest of the opposite sex spend the night in the same house when the children are present. Nothing in the record reflects that Chuck would not abide by this provision. Andy argues that the relationship will make the older son, Robert, uncomfortable around Chuck's paramour. Again, our review of Robert's testimony reveals nothing that should prevent Chuck's visitation. Robert's overall response to his father's new paramour is hesitant and confused, but not unusual for a child adjusting to his parents' divorce. We find, therefore, that neither this issue, nor any of the other issues raised by Andy concerning the visitation of Chuck have merit and we affirm the child custody as ordered by the trial court.

Child Support
Andy argues that the trial court erred in setting the amount of child support at $3,185 a month and giving Chuck a credit of $350 per month for the health insurance premiums. She argues that the trial court should have considered Chuck's $27,000 bonus in 2006 in determining his monthly income. She further contends that the trial court erred in considering the health insurance premiums when determining the total child support obligation, but then also giving Chuck a credit for the amount.
La. R.S. 9:315.19 provides a schedule to be used to determine basic child support. The highest level specified in the schedule is a combined adjusted gross monthly income of $20,000.[2] At that level, for two children, the basic support amount is *834 $2,647. La. R.S. 9:315.13(B), however, provides that, if the parties' combined adjusted gross income exceeds the highest specified level, the court shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in La. C.C. art. 141; but, in no event, shall the payment be less than the highest amount provided in the schedule.
The overriding factor in determining the amount of support is the best interest of the children. The amount of support should be determined on a case-by-case basis. A parent's ability to pay and the lifestyle that the children would have enjoyed if the parents had not separated are important considerations. Jones v. Jones, 38,790 (La.App.2d Cir.6/25/04), 877 So.2d 1061; Reeves v. Reeves, 36,259 (La.App.2d Cir.7/24/02), 823 So.2d 1023. Pursuant to the express language of La. R.S. 9:315.13, the district court must use its discretion in setting the amount of the basic child support obligation when the parties' monthly income exceeds the highest figure provided in the schedule, and its judgment will not be disturbed absent an abuse of that discretion. Jones, supra.
Under La. R.S. 9:315(C)(3)(a), gross income includes bonuses. This court has recognized, however, the potential problems when a large year-end bonus, which is sometimes almost equal to the annual base salary, is included in the calculation of the parent's income for purposes of setting a monthly child support amount. Patrick v. Patrick, 34,799 (La.App.2d Cir.4/4/01), 785 So.2d 169. The trial court, therefore, has considerable discretion in considering bonuses in the child support calculation. Id.
While the trial court did not expressly accept the totals set forth in the child support worksheet submitted by Chuck, it did award nearly identical child support as determined by that worksheet. Chuck did not include in the worksheet his $27,000 bonus in his monthly adjusted gross income. It appears that the trial court did not consider the $27,000 bonus in its calculations as well. We find that the trial court abused its discretion in not considering the $27,000 bonus of Chuck. The trial court did not provide any reasons why it failed to consider the bonus despite its inclusion in the definition of gross income under La. R.S. 9:315(C)(3)(a). This bonus was not so large compared to Chuck's salary of $230,000 that it would put him in a precarious financial situation if he did not receive the bonus in a particular year. The evidence showed that Chuck received the bonus in 2006 and it was possible to receive such a bonus in the future. Chuck argues that the bonus is not guaranteed, and, therefore, should not be considered. Bonuses, by their nature, are rarely guaranteed and yet La. R.S. 9:315(C)(3)(a) expressly includes them in the definition of gross income.
We, therefore, recalculate the child support considering Chuck's bonus of $27,000. With the bonus, the combined monthly adjusted gross income of the parties is $24,112. Considering the parents' ability to pay and the lifestyle that the children would have enjoyed if the parents had not separated, as well as the best interest of the children, we set the amount of the basic child support obligation at $3,100. After recalculating the percentage of share income and including child care costs, health insurance premiums and extraordinary expenses, we amend the child support award to $3,456 per month, with a credit for Chuck's payment of the health insurance premiums, as discussed below.
After the basic child support obligation is determined, the total child support obligation *835 is computed by adding to it the net child care costs, health insurance premiums, extraordinary medical expenses and other extraordinary expenses. La. R.S. 9:315.8(A); Green v. Green, 95-307 (La. App. 3rd Cir.10/4/95), 663 So.2d 277. The party without legal custody or the non-domiciliary party owes the custodial or domiciliary party for his or her share of the total child support obligation, "minus any court-ordered direct payments made on behalf of the child for work-related net child care costs, health insurance premiums, extraordinary medical expenses, or extraordinary expenses provided as adjustments to the schedule." La. R.S. 9:315.8(D). (Emphasis added.)
The trial court correctly included the $350 in monthly health insurance premiums in determining the child support obligation as required by La. R.S. 9:315.8(A). It then also correctly allowed Chuck a credit for that amount as provided by La. R.S. 9:315.8(D). We, therefore, affirm the credit of $350 for the health insurance premiums. As discussed above, we set Chuck's child support obligation at $3,456 per month with a credit of $350 for his payment of health insurance premiums, resulting in a final child support payment of $3,106 per month payable by Chuck to Andy.

Spousal Support
Andy appeals the trial court's award for spousal support of $400 per month for 24 months and $250 per month for 36 months thereafter.
The initial consideration in determining if a claimant is entitled to permanent spousal support is whether he or she is free from fault in causing the breakup of the marriage. La. C.C. art. 111. Chuck does not argue in his brief that the trial court erred in finding Andy free from fault; therefore, that issue is not before us.
Upon a finding of lack of fault, permanent spousal support is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. Mizell v. Mizell, 41,487 (La.App.2d Cir.11/3/06), 942 So.2d 1191, writ denied, 06-2884 (La.3/9/07), 949 So.2d 440; Gibbs v. Gibbs, 33,169 (La.App.2d Cir.6/21/00), 764 So.2d 261; Council v. Council, 34,290 (La.App.2d Cir. 12/15/00), 775 So.2d 628. Maintenance includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household necessities and income tax liability generated by alimony payments. Settle v. Settle, 25,643 (La. App.2d Cir.3/30/94), 635 So.2d 456, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194; Gibbs v. Gibbs, supra.
Final periodic spousal support is governed by La. C.C. art. 112, which provides:
A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.
(3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
B. The sum awarded under this Article shall not exceed one-third of the obligor's net income.
*836 The trial court is vested with great discretion in making alimony determinations and its judgment will not be disturbed absent a manifest abuse of that discretion. Mizell v. Mizell, supra; Drury v. Drury, 38,951 (La.App.2d Cir.9/22/04), 883 So.2d 465.
Upon our review of the record, we find that the trial court erred in its award of spousal support. The trial court apparently found Andy in need and, thereby, awarded her initial spousal support for the first two years and then a reduced amount for the following three years. Nothing in the record, however, shows that Andy's need will be reduced after two years or eliminated after five years.
Andy submitted into evidence an affidavit of income and expenses. She testified that her expenses are $6,187.24. While some of the expenses that she listed for herself were also attributable to the children and some of the expenses were beyond a definition of maintenance, her expenses related to maintenance still far exceed her total gross monthly income of $2,695.95.
Chuck argues that the issue is not the sufficiency of funds available to Andy, but her financial mismanagement and excessive spending. In support, he submitted an account summary for two months' purchases on their joint credit card before he canceled it. In doing so, he implies that the total amount alone indicates the excessive spending of Andy. He points to no particular purchases or pattern of purchases as excessive. We do not find any such purchases as apparent from the credit card statements submitted. We do not agree that the credit card indicates excessive spending by Andy. The testimony is consistent that Andy was responsible for most purchases for the house and the children, including food and clothes. As was the case during the marriage, the family home was in Farmerville while the children's school and activities were in Ruston. The credit card statement has a number of purchases at gas stations as would be expected for such a commute. We, therefore, reject Chuck's contention that Andy's purchases do not actually reflect her need.
We, therefore, amend the spousal support to $1,000 a month. We further find no reason the support would be necessary for only a limited period of time. We, therefore, set the spousal support to continue until extinguishment under La. C.C. arts. 114 & 115.[3]

Reimbursement for Contribution to Education
Andy seeks reimbursement under La. C.C. art. 121 for her contributions to Chuck's education, particularly through law school. Chuck graduated from law school in 1998.
We have recently addressed La. C.C. art. 121 in Clemons v. Clemons, 42,129 (La.App.2d Cir.5/9/07), 960 So.2d 1068, writ denied, 07-1652 (La.10/26/07), 966 So.2d 583, and we will not be redundant here. In Clemons, we focused on whether a spouse had received sufficient benefit of the other spouse's education. If a contributing spouse has already benefited from the other spouse's education through an improved standard of living or *837 an accumulation of community property, then no award under La. C.C. art. 121 is warranted. Id. Further, La. C.C. art. 121 awards are typically to address cases where the parties divorce shortly after the graduation of the supported spouse. Id.
In the case sub judice, Chuck filed for divorce six years after his graduation from law school. In that time, Andy received sufficient benefit from Chuck's education. We, therefore, deny Andy's request for an award under the provisions of La. C.C. art. 121.

CONCLUSION
For the reasons set forth above, we affirm the custody order of the trial court. We amend the child support award to $3,456 per month, with a credit of $350 for payment of health insurance premiums, resulting in a final child support payment of $3,106 per month payable by Robert Charles Earle to Mary Anne Hill Earle. We further amend the award for final periodic spousal support to $1,000 per month payable by Robert Charles Earle to Mary Anne Hill Earle. We further decline to award Mary Anne Hill Earle any amount for contribution to education under the provisions of La. C.C. art. 121. We affirm the trial court's judgment in all other respects. Costs of appeal are assessed equally to the parties.
AMENDED AND, AS AMENDED, AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, CARAWAY, PEATROSS, DREW & MOORE, JJ.
Rehearing denied.
BROWN and CARAWAY, JJ., would grant rehearing.
NOTES
[1] La. C.C. art. 134 provides that:

Such factors may include: (1) The love, affection, and other emotional ties between each party and the child. (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child. (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs. (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment. (5) The permanence, as a family home, of the existing or proposed custodial home or homes. (6) The moral fitness of each party, insofar as it affects the welfare of the child. (7) The mental and physical health of each party. (8) The home, school, and community history of the child. (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party. (11) The distance between the respective residences of the parties. (12) The responsibility for the care and rearing of the child previously exercised by each party.
[2] Louisiana Act 585, 2008 Regular Session, amended and re-enacted La. R.S. 9:315.19 and increased the maximum monthly combined adjusted monthly gross income to $30,000.
[3] Art 114 provides:

An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. The subsequent remarriage of the obligor spouse shall not constitute a change of circumstance.
La. C.C. art. 115 provides that:
The obligation of spousal support is extinguished upon the remarriage of the obligee, the death of either party, or a judicial determination that the obligee has cohabited with another person of either sex in the manner of married persons.