STONE, J.
11 Helen Tuft (“Helen”) appeals the trial court’s judgment, awarding joint custody and fixing support for her minor children with Dr. Heber Tuft (“Dr. Tuft”), as well as the denial of her request for interim spousal support. For the following reasons, we reverse the trial court’s decision not to appoint a parenting coordinator. In all other respects, we affirm. The case is remanded with instructions.
FACTS AND PROCEDURAL BACKGROUND
Helen and Dr. Tuft were married on August 5, 2003. They have four children together: D.T. (08/17/06), C.T.-l (11/10/08), C.T.-2 (06/16/11), and S.T. (10/24/13).[1] Dr. Tuft is a pediatric dentist with his own practice in Monroe. Helen is a stay-at-home mom and primary caregiver to the children. Helen and Dr. Tuft separated on September 28, 2014, and Helen and the children moved in with her parents. During this time, Helen allowed Dr. Tuft visitation with the children at her parents’ home for one hour, three times a week.
On October 31, 2014, Helen filed a petition for divorce against Dr. Tuft. In her petition, Helen sought joint custody and designation as domiciliary parent with Dr. Tuft receiving supervised visitation. Helen sought awards of child and spousal support, as well as exclusive use of the former matrimonial domicile. Moreover, Helen requested Dr. Tuft provide her and the children with medical insurance, and all medical, drug, dental, and orthodontic expenses not covered by said insurance. Dr. Tuft responded with an answer and reconven-tional demand seeking joint custody 12and control over the children. Dr. Tuft also requested exclusive use of the former matrimonial domicile.
The parties subsequently stipulated to participation in The Wellspring Supervised Visitation and Safe Exchange Program (‘Wellspring”). The order, signed February 20, 2015, provided Helen would have domiciliary custody of the children with Dr. Tuft receiving supervised visitation twice a week and the option to visit the children at Helen’s residence. Dr. Tuft was also allowed to visit the children’s school for lunch and any special activities. To assist the trial court in a final custody and visitation determination, the trial court ordered the parties undergo a custody evaluation with Donna George (“George”), a licensed professional counselor with Wellspring. The custody evaluation required both parties to undergo psychological evaluations.
During the custody evaluation, Helen revealed her issues with Dr. Tuft began in 2011 when Dr. Tuft started displaying increasing anger and abusive behaviors towards her and the children. Helen claimed *921 Dr. Tuft became increasingly agitated with the children and used disciplinary methods she believed were abusive. Helen feared Dr. Tuft’s behavior was a result of the emotional and physical abuse he suffered as a child at the hands of his father. She was also concerned about Dr. Tuft potentially suffering from sex addiction, which was possibly attributed to the sexual abuse he suffered at the age of five.
On June 10, 2015, a hearing officer issued the following recommendations, based on George’s custody evaluation:
(1) Helen be awarded primary domiciliary custody of the minor children, subject to supervised visitation for Dr. Tuft;
la(2) Dr. Tuft submit to a psychological evaluation by Helen’s expert, Dr. John Simoneaux, and continue therapy with his therapist, Dr. Shawn Jefferies;
(3) Dr. Tuft’s child support obligation be set at $10,000.00 per month and his spousal support obligation be set at $5,000.00 per month, retroactive to judicial demand;
(4) Child support arrears be fixed at $70,000.00 and spousal support arrears be fixed at $35,000.00;
(5) Helen retain exclusive use of the former matrimonial domicile during the pendency of the proceedings; and
(6) Dr. Tuft provide medical insurance for Helen and the children, and all medical, drug, dental, and orthodontic expenses not covered by said insurance.
The trial court signed an interim order adopting the recommendations of the hearing officer. Both parties objected to the order. Helen also filed a rule for contempt against Dr. Tuft and moved for the appointment of a parenting coordinator.
A trial on the matter proceeded over seven nonconsecutive days beginning on July 27, 2015, and ending on May 23, 2016. The majority of the testimony at trial was focused on Dr. Tuft’s disposition and the safety of the children in his custody. The trial court heard from several witnesses, including the parties, and countless experts. On November 23, 2015, the trial court heard George’s testimony regarding her custody evaluation of the parties. George testified Dr. Tuft’s supervised visitation with the children was going well, and that her assessment of the case did not suggest Dr. Tuft was a danger to his children. Based on George’s recommendation, the trial court lifted Dr. Tuft’s supervised visitation. The trial court awarded Dr. Tuft unsupervised visitation with the children, but only daytime visitation with S.T., every other weekend from Friday until Sunday.
I ¿On June 10, 2016, the trial court issued a final judgment on the matter. The trial court’s judgment provided the parties have joint custody of the children with Helen as domiciliary parent. Dr. Tuft was given unsupervised visitation with the children every other week from Thursday through Tuesday. The parties were to share holidays equally, and alternate weeks during the summer. As domiciliary parent, Helen was responsible for all medical decisions, except in emergencies. However, Dr. Tuft was responsible for all dental care decisions. Dr. Tuft was allowed out-of-state travel with the children, and both parties were allowed to take the children to the church of their choice. Moreover, the trial court ordered both parties to agree on extracurricular activities and share the costs equally. If the parties could not agree, one parent could unilaterally make the decision for the child to participate in the activity but pay the full cost.
The trial court ordered Dr. Tuft to pay child support in the amount of $10,000.00 per month. Dr. Tuft was to provide the children with health, dental, prescription drug, vision, and orthodontic insurance. All *922 uninsured medical, dental, vision, and orthodontic expenses were to be shared by the parties equally. The trial court denied Helen’s request for interim spousal support and ordered her to pay the mortgage on the former matrimonial domicile as long as she enjoyed exclusive use of it. The trial court also denied Helen’s rule for contempt against Dr. Tuft and request for a parenting coordinator. Helen now appeals.
DISCUSSION

Child Custody

Helen argues the trial court abused its discretion in extending Dr. Tuft’s unsupervised visitation to Thursday through Tuesday every other | ¡weekend and alternating weeks in the summer. As it pertains to the best interest of the children, Helen claims the trial court inadequately weighed Dr. Tuft’s capacity and disposition as it affects the welfare of the children. Helen contends the trial court ignored the recommendations of various experts who testified regarding Dr. Tuft’s potential mental health issues that have yet to be treated.
Specifically, Helen states the trial court ignored testimony that Dr. Tuft needs counseling in anger management and disciplinary techniques, as well as parental coaching. Helen contends Dr. Jefferies has yet to rule out that Dr. Tuft suffers from Posh-Traumatic Stress Disorder (“PTSD”), panic attacks, and general anxiety disorder. Helen claims Dr. Tuft has displayed an increasing anger and aggressiveness toward her and the children, and until Dr. Tuft receives sufficient treatment for his issues, he should not have extended unsupervised visitation with the children.
It is well settled in our statutory and jurisprudential law that the paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Semmes v. Semmes, 45,006 (La.App. 2d Cir. 12/16/09), 27 So.3d 1024, 1029; Evans v. Lungrin, 97-0541 (La. 02/06/98), 708 So.2d 731. The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134.[2]
|fiThe trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Semmes, supra; Corral v. Corral, 47,294 (La.App. *923 2d Cir. 06/13/12), 93 So.3d 793, 796. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Id.
La. R.S. 9:335(A)(2)(b) provides that to the extent feasible and in the best interest of the child, physical custody of the child should be shared equally. Yet, when the trial court finds that a decree of joint custody is in the best interest of the child, the statute does not necessarily require an equal sharing of physical custody. Jones v. Jones, 38,790 (La.App. 2d Cir. 06/25/04), 877 So.2d 1061, 1066; Semmes, supra; Corral, supra. Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Id.
After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the expert’s professional qualifications and experience, and the facts upon which the opinion -is based. It is within the trial court’s discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole. Jones, supra; Manno v. Manno, 49,533 (La.App. 2d Cir. 11/19/14), 154 So.3d 655, 665.
The trial court has vast discretion in deciding matters of child custody and visitation. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses. Semmes, supra; Slaughter v. Slaughter, 44,056 (La.App. 2d Cir. 12/30/08), 1 So.3d 788, 791. Therefore, the trial court’s determination will not be disturbed on appeal, absent a clear showing of an abuse of discretion. As long as the trial court’s factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not reverse even though convinced it would have weighed the evidence differently if acting as the trier of fact. Id.
Helen alleged Dr. Tuft was suffering from a sex addiction. Dr. Tuft testified that he admitted to having a sex addiction only to appease Helen and save his marriage. During the trial, multiple experts confirmed Dr. Tuft was not suffering from sex addiction, but was potentially suffering from' other health issues. One of the experts, Dr. Shawn Jefferies (“Dr. Jeffer-ies”), concluded Dr. Tuft was not a sex addict, but had yet to eliminate the possibility that he was suffering from PTSD and general anxiety disorder. According to Dr. Jefferies, if Dr. Tuft was suffering from PTSD and general anxiety disorder, it was more than likely related to the loss of his marriage and the restricted access to his children.
Despite Helen’s expert, Dr. John Simo-neaux’s (“Dr. Simoneaux”), reservations about the abuse Dr. Tuft suffered as' a child, he made it clear that the only person equipped to make a custody recommendation in the instant case was the- custody evaluator. In her custody evaluation report, dated May 22, 2015, George recommended Dr. Tuft’s supervised visitation | ^continue for two more months. Six months after her recommendation, George testified that Dr. Tuft’s supervised visitation with the children was going well, and that her assessment of the case did not suggest Dr. Tuft was a danger to the children. George stated she reviewed the expert testimony of Dr. Simoneaux and Dr. Jefferies, and neither doctor gave Dr. Tuft a firm diagnosis of anything that affected the safety of the children. George recommended Dr. Tuft have unsupervised visitation with the children immediately. Thereafter, the trial court issued an interim order granting Dr. Tuft unsupervised *924 visitation with the children every other weekend from Friday until Sunday.
In its final judgment on June 10, 2016, the trial court relied on George’s testimony that it was important for the children to be with them father during their formative years. The trial court did not believe equal time was appropriate for this case, but did believe Dr. Tuft needed more than two nights out of every 14 nights with the children. Accordingly, the trial court extended Dr. Tuft’s unsupervised visitation to every other week, from Thursday at 5:00 p.m. until Tuesday morning when Dr. Tuft returned the children to school. This would allow Dr. Tuft to attend “Family Night” with the children, which is held every Monday night at his church. The trial court also provided that Helen and Dr. Tuft would have the children for alternating weeks during the summer.
Based on our review of the record, there was a factual basis for the trial court’s decision. The trial court had discretion to accept or reject any part of the testimony presented at trial. The trial court elected to rely largely on the testimony of George, whose duty as the custody evaluator is to protect the best interest of the children. Helen’s main issue with the trial ^court’s ruling was the safety of the children. George found nothing in her evaluation suggesting Dr. Tuft was a danger to the children. Notably, George testified Dr. Tuft needed to be given the responsibilities of a father in every sense of the word to build trust with the children. As a result, we find the trial court did not abuse its discretion in extending Dr. Tuft’s unsupervised visitation with the children.

Helen’s Rights as Domiciliary Parent

Helen argues the trial court appointed her primary domiciliary parent, but stripped her of authority customarily exercised by a domiciliary parent, specifically as it relates to the children’s dental care and participation in extracurricular activities. Helen further argues the trial court erred in allowing the parties to take the children to the church of their choice.
First, we address Helen’s right to make choices as it relates to the children’s dental care. The trial court’s judgment states that Helen, as the domiciliary parent, is responsible for all medical decisions for the minor children. However, the trial court found this to be a special case in that Dr. Tuft was a pediatric dentist. The trial court was concerned with Helen taking the minor children to other dental providers, without consulting with Dr. Tuft. The trial court concluded Dr. Tuft was in the best position to provide dental care for the children, and that making him responsible for dental care decisions was in the children's best interest.
La. R.S. 9:335 provides that “the domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise.” As such, the trial court is allowed to tailor the authority of the domiciliary parent on a case-by-case basis. It is more than | ¶plogical to assume Dr. Tuft, a successful pediatric dentist, is in the best position to provide dental care to the children. Thus, the trial court was well within its discretion in making Dr. Tuft responsible for the children’s dental care.
As it pertains to the children’s extracurricular activities, we find no error in the trial court ordering the parties to agree on extracurricular activities. The trial court found it was important for both parties to engage in the health, athletic, social, and cultural development of the children. If the parties fail to agree on an extracurricular activity, a party may unilaterally choose for the child to participate in the activity but solely pay the costs. As stated below, neither party has shown a *925 financial inability to engage the children in extracurricular activities. Thus, we find no abuse of discretion by the trial court.
Lastly, Helen argues the trial court erred by allowing the parties to take the children to the church of their choice. Helen asserts the children should exclusively attend her church, the church they have attended their entire lives. There is nothing in the record to indicate it is not in the best interest of the children for Dr. Tuft to take the children to his church. As noted by the trial court, the father’s role is important in the children’s religion, Church of Jesus Christ of Latter-day Saints, and it is important for the children to see Dr. Tuft in his role at the church he currently attends. Thus, the trial court did not abuse its discretion.

Child Support

Helen contends the trial court abused its discretion by only awarding her $10,000.00 per month in child support and ordering her to pay half of the children’s noncovered health-related expenses, extracurricular activity In expenses, and all other expenses incurred for the benefit of the children. Helen claims her annual income was incorrectly set at $282,145.00 because her 2015 income included a rare capital gain of $150,000.00. Helen further argues the trial court failed to address Dr. Tuft’s child support arrears, despite his refusal to pay child support throughout the proceedings.
La. R.S. 9:315.19 provides a schedule to be used to determine basic child support. The highest level specified in the schedule is a combined adjusted gross monthly income of $40,000.00. At that level, for four children, the basic support amount is $6,289.00. However, La. R.S. 9:315.13(B) provides that if the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in La. R.S. 9:315.19, the court shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent, but in no event shall it be less than the highest amount set forth in the schedule.
The overriding factor in determining the amount of support is the best interest of the children. The amount of support should be determined on a case-by-case basis. A parent’s ability to pay and the lifestyle that the children would have enjoyed if the parents had not separated are important considerations. Jones, supra; Earle v. Earle, 43,925 (La.App. 2d Cir. 12/03/08), 998 So.2d 828, 834, writ denied, 09-0117 (La. 02/13/09), 999 So.2d 1151. Pursuant to the express language of La. R.S. 9:315.13, the district court must use its discretion in setting the amount of the basic child support obligation when the parties’ monthly income exceeds the highest figure provided in the schedule, and its judgment will not be disturbed absent an abuse of that discretion. Jones, supra; Earle, supra.
|1?The parties’ income far exceeds the highest level specified in the schedule of La. R.S. 9:315.19, so the trial court had discretion in setting the amount of child support in accordance with the best interest of the children and the circumstance of each parent. The trial court used the spreadsheet prepared by Helen to determine the monthly expenses of her and the children. Helen totaled her and the children’s monthly expenses at $28,377.08. After eliminating expenses from Helen’s spreadsheet that it felt were not for the benefit of the children, the trial court totaled Helen and the children’s monthly expenses at $13,769.71. The trial court subtracted Helen’s one-fifth portion and then added the children’s annual tuition in the amount of $23,956.00 and $1,000.00 for uni *926 forms to total the children’s monthly expenses at $13,095.44.
Based upon the parties’ 2015 tax returns, Dr. Tuft earned $882,427.00, which accounted for 76% of the parties’ combined income. Helen earned $282,145.00, which accounted for 24% of the'parties’ combined income. Accordingly, Dr. Tuft was responsible for 76% of the children’s monthly expenses or $9,952.53 a month. The trial court rounded this number up to $10,000.00 to reach Dr. Tuft’s monthly child support obligation.
First, Helen’s argument that the trial court erred in including her $150,000.00 capital gain in her gross income for child support purposes is without merit. Under La. R.S. 9:315(C)(3)(a), gross income includes capital gains, and Helen fails to show how including her capital gain would be inequitable. La. R.S. 9:315.1.
Next, Helen argues the trial court erred in determining the children’s monthly expenses. In coming to a determination that' the children’s monthly |^expenses were $13,095.44, the trial court deducted the following expenses that it felt were not for the benefit of the children: the mortgage for the former matrimonial domicile, because Helen was granted exclusive use; the amount listed for diapers and wipes, because S.T. is now potty-trained; the amount for health insurance, because Dr. Tuft is providing the children with health insurance; church gifts, because they were Helen’s personal tithes; and, the amounts listed .for holiday gifts and vacations, because both parties could gift and take the children on vacations at their cost. We find all these deductions were within the trial court’s discretion.
As for the child care expenses, the trial court stated in its written reasons that it deducted the expenses because child care is more of a benefit to Helen than the children. The trial court is not required to include child care expenses in the parties’ basic child support obligation.[3] Since the parties’ income exceeded the highest level specified in the schedule, the trial court is only required to set the children’s support obligation in accordance with the best interest of the children and the circumstances of each parent. Helen is a stay-at-home mother and has not indicated she is seeking employment in the near future. Thus, the trial court was within its discretion in excluding child care costs from the parties’ basic child support obligation.
Last, Helen argues the trial court abused its discretion in ordering her to pay half of the children’s noncovered health-related expenses, extracurricular activity expenses, and all other expenses incurred for the benefit of the. children. To the extent that the parties agree or the court so [^orders, extraordinary medical expenses, expenses related to private school attendance, and other expenses “intended to enhance the health, athletic, social, or cultural development of a child” may be added to the basic child support obligation. These expenses then become a part of the total child support obligation owed by the parents. See La. R.S. 9:315.5 and 315.6.
In light of the facts and circumstances of this case, and considering Helen is receiving $10,000.00 per month in basic child support from Dr. Tuft, we find the trial court did not abuse its discretion in ordering Helen to pay half of the noncovered health-related expenses, extracurricular *927 activity expenses, and all other expenses incurred for the benefit of the children. As ■will be stated below, Helen has not shown she is financially incapable of equally splitting these expenses with Dr. Tuft.
We note the trial court failed to address and fix the child support arrears of Dr. Tuft. Thus, the issue of child support arrears is remanded to the trial court to set the amount owed by Dr. Tuft.

Interim Spousal Support

Helen argues the trial court erred in failing to award her interim spousal support. First, she asserts the trial court erred in considering the fact she could sell or lease the property she inherited from her grandmother. Secondly, she contends the trial court failed to consider her legitimate expenses, which included a $2,959.37 mortgage payment, child care, church tithes, vacations and holidays with the children, as well as half of the children’s non-covered medical expenses, counseling, and extracurricular activities.
Á spouse may be awarded an interim allowancé based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living |1sof the spouses during the marriage. La. C.C. art. 113; Jones, supra; Kirkpatrick v. Kirkpatrick, 41,851 (La.App. 2d Cir. 01/24/07), 948 So.2d 390, 393. A spouse’s right to claim interim periodic support is based on the statutorily imposed duty of the spouses to support each other during their marriage Jones, supra; Kirkpatrick, supra; McAlpine v. McAlpine, 94-1594 (La. 09/05/96), 679 So.2d 85. The needs of the wife have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband’s ability to pay. Kirkpatrick, supra.
In order to demonstrate the need for interim periodic spousal support, the claimant has the burden of proving that she lacks sufficient income or the ability to earn a sufficient income to maintain the standard of living that she enjoyed during the parties’ marriage. Jones, supra-, Kirkpatrick, supra. The trial court is afforded much discretion in determining an award of interim spousal support. Such a finding will not be disturbed absent a clear abuse of discretion. Id.
The trial court used Helen’s expenses spreadsheét to determine her personal expenses totaled $2,753.94 a month. Additionally, the trial court factored in a $1,000.00 health insurance policy, her portion of 'the children’s monthly expenses, and her $2,959.37 mortgage. Déspité these expenses, the trial court concluded Helen failed to show a need for interim spousal support.
The trial court improperly considered the property Helen inherited from her grandmother in determining Helen’s need for spousal support. Patton v. Patton, 37,401 (La.App. 2d Cir. 09/24/03), 856 So.2d 56, 60 (“A spouse claiming alimony is not required to sell her non-liquid assets to |1fisupport herself.”). Nonetheless, Helen still fails to show she lacks sufficient income to maintain the standard of living she enjoyed during her marriage. Jones, supra. Andrew Parker, the Tuft family’s certified public accountant, testified that Helen’s net income in 2015 was $189,455.00, which gave her a monthly income of almost $16,000.00. Thus, after subtracting Helen’s monthly personal expenses, health insurance policy, a portion of the children’s expenses, and mortgage payment, Helen still has approximately $5,000.00 a month to live on. Moreover, she is receiving $10,000.00 a month from Dr. Tuft in child support.
*928 After considering Helen’s net income in 2015 and the money she receives from Dr. Tuft in child support, we find Helen should have no issues paying any of her legitimate expenses. As a result, the trial court did not abuse its discretion in failing to award Helen interim spousal support.
In an interim order filed on July 7, 2015, the trial court adopted the recommendations of the hearing officer that Helen receive $5,000.00 a month in interim spousal support. The hearing officer also set the spousal support arrears at $35,000.00. The trial court failed to address and fix the amount of back-due interim spousal support owed by Dr. Tuft. Thus, the issue of interim spousal support arrears is remanded to the trial court to set the amount owed by Dr. Tuft.

Parenting Coordinator

Helen argues the trial court erred by failing to appoint a parenting coordinator. We agree. On motion of a party or on its own motion, the court may appoint a parenting coordinator in a child custody case for good cause shown if the court has previously entered a judgment establishing child custody. La. R.S. 9:358.1(A). “Good cause” as defined by the statute 1^includes “a determination by the court that either or both parties have demonstrated an inability or unwillingness to collaboratively make parenting decisions without the assistance of others or insistence of the court.” Revision Comment (c) of Revised Statute 9:358.1. Good cause may include an inability or unwillingness to comply with parenting agreements and orders by the trial court, the parties demonstrating an ongoing pattern of unnecessary litigation, and the parties refusing to communicate or having difficulty communicating about the care of the children. Id.
The record clearly indicates the parties have an unwillingness to communicate and cooperate with each other as to the care of the children. For example, Helen points to Dr. Tuft’s failure to use Our Family Wizard, a tool used to promote co-parenting by facilitating communication between separated or divorced parents in relation to their children. The parties’ participation in Our Family Wizard was instituted by court order because Dr. Tuft refused to voluntarily participate.
George testified she believed Dr. Tuft’s unwillingness to participate in Our Family Wizard was due to his belief that he was being controlled and had to have permission from others to be a father to his children. George believed Dr. Tuft’s frustration began, prior to court involvement, when Helen limited his visitation with the children at her parents’ house to one hour, three times a week. George testified that Dr. Tuft was restricted in what he could do with the children and would rebel against those restrictions to get privacy with the children.
Both parties have spent excessive money and energy in litigation trying to determine what is in the best interest of the children, but the parties’ opinions of each other are preventing them from working together | lsfor the best interest of the children. Helen undoubtedly has reservations about the children’s safety while in Dr. Tuft’s custody. Dr. Simoneaux professed the parties’ reservations about each are often expressly or implicitly communicated to the children, which is damaging to them over a long period of time.
The records reveal that both parties have issues with how the other communicates regarding the children. The parties need to learn how to co-parent post-divorce, and a parenting coordinator would help the children’s well-being in the process. The instant case is a perfect example of why our legislature granted the trial *929 court authority to appoint a parenting coordinator.[4] Accordingly, the trial court abused its discretion by failing to appoint a parenting coordinator, pursuant to La. R.S. 9:358.1. A parenting coordinator is clearly in the best interest of not only the parties but, more importantly, the children.

Rule for Contempt

Helen contends the trial court abused its discretion by failing to find Dr. Tuft in contempt for disobeying the trial court’s interim order. Specifically, Dr. Tuft failed to take the children to Helen’s church on January 17, 2016. When Helen contacted Dr. Tuft as to the children’s whereabouts that Sunday, Helen asserts it took Dr. Tuft seven hours to l19respond. Helen claims Dr. Tuft’s actions were intentional and totally without justification.
The trial court’s interim order stated Dr. Tuft “shall attend church with the minor children at the church [Helen] traditionally attends,” which is at the Monroe Ward. Dr. Tuft admitted to taking the children to his church at the West Monroe Ward on January 17, 2016. Dr. Tuft testified that both wards were satellite broadcast that Sunday, and thus, both churches had the same service. The trial court ruled that Dr. Tuft and the children were not required to be present at Helen’s church every Sunday, and found Dr. Tuft’s failure to attend Helen’s church on one Sunday was not the product of contemptuous behavior.
La. C.C.P. art. 224 provides that constructive contempt includes “willful disobedience of any lawful judgment, order, mandate, writ, or process of the court.” Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. Swan v. Swan, 35,393 (La.App. 2d Cir. 12/07/01), 803 So.2d 372, 375. A trial court is afforded great discretion in determining whether a party should be held in contempt for disobeying the court’s order, and its decision will not be reversed absent an abuse of discretion. State ex rel. J.M. v. Brooks, 42,846 (La.App. 2d Cir. 12/05/07), 972 So.2d 1197, 1200.
This court finds Dr. Tuft’s failure to notify Helen of his intention to take the children to his church and leaving her in limbo for seven hours as to the children’s whereabouts is strong evidence of Dr. Tuft’s intent to consciously disobey the trial court’s interim order. Nevertheless, Dr. Tuft testified that the services at both churches were the same that Sunday and the interim order did not state Dr. Tuft had to take the children to Helen’s | ^church “every” Sunday the children were in his custody. As a result, there is a factual basis for the trial court not finding Dr. Tuft in contempt, and we find no abuse of discretion.
CONCLUSION
For the aforementioned reasons, we reverse the trial court’s decision not to appoint a parenting coordinator. In all other respects, the judgment is affirmed. The *930 matter is remanded to the trial court with instructions to appoint a parenting coordinator and issue a determination on the amount of Dr. Tuft’s child support and interim spousal support arrears. Costs of this appeal are assessed to the parties equally.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
DREW, J., concurs with written reasons.

. The children are referred to by their initials to preserve their anonymity in this confidential proceeding.

. La. C.C. art. 134 provides that:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child,
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. While La. R.S. 9:315.3 requires the trial court to add net child care costs to the basic child support obligation, net child care costs are "reasonable costs of child care incurred by a party due to employment or job search.” Thus, La. R.S. 9:315.3 would be inapplicable in Helen's case, because she is currently staying at home with the children.

. Revision Comment (a) of Revised Statute 9:358.1 provides that:
Parenting coordination is a child-focused alternate dispute resolution process in which a duly qualified parenting coordinator assists parents or persons exercising parental authority to implement a parenting plan by facilitating the resolution of their disputes in a timely manner and by reducing their child-related conflict so that the children may be protected from the impact of that conflict. The parenting coordinator assists the parties in promoting the best interests of the children by reducing or eliminating child-related conflict through the use of the parenting coordination process.